him; that there has been a long delay since bringing this action to the present time; that the defendant may not be able to recover money paid to producers; that the Secretary of Agriculture is in a better position to expeditiously determine the issues of fact and law raised by the defendant than the Court; that such a hearing may be promptly held by the Secretary of Agriculture, and this action, if necessary to be tried thereafter, may be promptly heard and tried.

It seems, therefore, that the hearing before the Secretary of Agriculture should be held before the hearing in this court. It may be, without such a hearing, that defendant would be deprived of due process of law. See La Verne Co-Operative Citrus Association v. United States, 9 Cir., 143 F.2d 415. I conclude that the Motion to Stay should be granted.

## THE F. S. LOOP et al.

No. 4095–Y.

District Court, S. D. California, Central Division.

Feb. 20, 1945.

Roy C. Kaiser, of Los Angeles, Cal., for libelant.

Overton, Lyman & Plumb, of Los Angeles, Cal., for claimants.

YANKWICH, District Judge.

The exceptions to the libel in rem, filed by Herbert C. Bryant, John B. Bane, Clayton J. Corbett, Roy A. Owens, and Walter M. Gleason, heretofore argued and submitted, are sustained and the libel in rem is ordered dismissed.

The libel is chiefly for wages as a watchman. It is the established rule in admiralty that the wages of a watchman or caretaker of a vessel do not give rise to a maritime lien. 46 U.S.C.A. § 972; The Fortuna, D.C.Wash. 1912, 206 F. 573; The Sinaloa, D.C.Cal. 1913, 209 F. 287; The William Leishear, D.C.Md. 1927, 21 F.2d 862. Nor can the libelant claim a lien for such wages and for moneys advanced under the provisions of Sections 490, 491 of the Harbors and Navigation Code of California, St.1937, p. 805. The Merchant Marine Act of 1920, 41 Stat. 1005, Subsection T, 46 U.S.C.A. § 975,—the same statute which in subsection Q provides for the maritime lien which is now embodied in 46 U.S.C.A. § 972—superseded all the provisions of state statutes covering liens on vessels enforceable by suits in rem in admiralty. The Saratoga, 2 Cir., 1913, 204 F. 952; The Juniata, D.C.Md. 1902, 277 F. 438; Burdine v. Waldon, 5 Cir., 1937, 91 F.2d 321.

Under the allegations of the libel, the gasoline and supplies, for which claim is made, were allegedly furnished at the request of the owner. When one who claims to be the agent of the owner furnishes such supplies, no maritime lien arises. The Eurana, 3 Cir., 1924, 1 F.2d 684; The Poznan, 2 Cir., 1925, 9 F.2d 838, 847. Furthermore, I do not think that a watchman can be called a "person to whom the management of the vessel at the port of supply is entrusted." These words imply a broader direction and control of the vessel than is implied in the mere act of watching a vessel out of commission. See: Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 1940, 310 U.S. 268, 277–280, 60 S.Ct. 937, 84 L.Ed. 1197.

Hence the ruling above made. Formal order, to be prepared by counsel for the claimants, to follow.

**BERNARD G. BRENNAN CO. v. UNITED STATES.**

**No. 43 C 707.**

District Court, N. D. Illinois, E. D.

Oct. 16, 1945.

W. R. Brown and Charles J. Calderini, both of Chicago, Ill., for plaintiff.

J. Albert Woll, U. S. Atty., of Chicago, Ill., for defendant.

LA BUY, District Judge.

### Findings of Fact

1. The plaintiff is, and at all times hereinafter mentioned was, an Illinois corporation engaged in the business of meat packing, with its principal office and place of business at Chicago, Ill.

2. This is a suit of a civil nature under Section 905 of the Revenue Act of 1936, c. 690, 49 Stat. 1748, 7 U.S.C.A. § 647.

3. That on January 29, 1934, plaintiff paid to the Collector of Internal Revenue the sum of $81,998.42 as floor stock taxes and on April 2, 1934, the sum of $136.86 as floor stock taxes on hogs and hog products under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq.

4. On December 15, 1933, plaintiff paid to J. B. Wood & Company, Chicago, Ill., the sum of $857.34 which was added to the price of certain lard purchased by the plaintiff from J. B. Wood & Company because of the floor stock taxes paid thereon by J. B. Wood & Company.

5. The defendant refunded to the plaintiff the sum of $2,194.86 of the said floor stock taxes and the plaintiff was reimbursed for said floor stock taxes by its vendees to the extent of $3,565.60.

6. On June 30, 1937, plaintiff filed a claim for refund of $77,232.06 of the floor stock taxes above mentioned which alleged that plaintiff had at all times sold its commodities at the prevailing market prices.

7. On December 16, 1939, plaintiff filed an amended claim for refund with the Commissioner of Internal Revenue for the refund of $77,232.06, in which, as evidence that the plaintiff had not shifted the burden of the tax it sought to have refunded, in which a comparison was made of the plaintiff's prices prevailing at the time of the incidence of the tax and those prevailing during the period in which the inventory upon which the tax was assessed was sold.

8. By registered letter dated June 12, 1943, the Commissioner of Internal Revenue rejected the amended claim for refund for the plaintiff's failure to establish that it had borne the burden of the tax