Frank M. WATRING and Vera L. Watring, Libelants,

v.

The UNNAMED INBOARD MOTOR BOAT NO. WV 4488 AB, her Engines, Tackle, Furniture and Appurtenances, Hoy E. Eakle, David Eakle, and Paul L. McClure, doing business as, Bee Run Dock, Respondents.

No. C. A. 3639.

United States District Court, S. D. West Virginia, Charleston Division.

Feb. 8, 1971.

Alexander J. Ross, Charleston, W. Va., for libelants.

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., William M. Kidd, Sutton, W. Va., for respondents.

## MEMORANDUM ORDER

FIELD, Chief Judge.

The accident giving rise to this litigation occurred on the waters of the Sutton Reservoir, also called Sutton Lake, in Braxton County, West Virginia, on or about May 1, 1965. The Sutton Reservoir, waters contained by a dam on the Elk River known as the Sutton Dam, is located entirely within the State of West Virginia. It is alleged that the libelants herein were injured while boating on the Sutton Reservoir as a result of the negligent operation of a boat owned by one respondent, operated by another respondent, and also as a result of alleged negligent business operations of a third respondent.

Jurisdiction is invoked pursuant to 28 U.S.C. § 1333, enacted by Congress pursuant to Article III, Section 2 of the Constitution of the United States. 28 U.S.C. § 1333 provides as follows:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

The respondents have moved to dismiss this action for lack of jurisdiction, and since there is admittedly no diversity of citizenship among the parties here involved, the jurisdiction of this Court must, of necessity, rest upon the basis of admiralty. Whether or not such admiralty jurisdiction exists must be determined by an analysis of whether or not the Elk River and, more particularly, the Sutton Reservoir are navigable waters of the United States.

A detailed discussion of the law relative to the test of navigability was made by the United States Supreme Court in The Daniel Ball, 10 Wall. 557, 19 L.Ed. 999 (1870). It stated that

"Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the Acts of Congress, in contradistinction from the navigable waters of the states, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water."

The rule enunciated in *The Daniel Ball* has remained viable although it has been interpreted and applied in many

different factual situations. In the case of The Montello, 20 Wall. 430, 22 L.Ed. 391 (1874), the Supreme Court accepted the test of navigability as set forth in *The Daniel Ball* stating:

"If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway."

In its opinion, however, the Court recognized the limits upon this definition of navigability by stating:

"It is not, however, as Chief Justice Shaw said, 'every small creek in which a fishing skiff or gunning canoe can be made to float at high water which is deemed navigable, but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture.'"

■ If the Elk River was, in fact, navigable or susceptible of being so used in its natural and ordinary condition in the Braxton County area, the fact that the Sutton Dam presently artificially obstructs its navigability would not remove it from admiralty jurisdiction. However, in order for the Elk River to fall within the classic definition of navigability at that point, it must be shown that it was capable of valuable public use in its natural condition and must have had a capacity for useful interstate commerce of a substantial and permanent nature. See United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914. Occasional or exceptional use under abnormal conditions will not suffice nor will a mere theoretical navigability or one that is temporary or unprofitable be sufficient. United States v. Doughton, 4 Cir., 62 F.2d 936.

■ The burden of proof, of course, rests upon the libelants to establish the navigability of the Elk River at the location that is involved in this litigation.

56 Am.Jur. Waters § 193, p. 656. The only evidence which counsel for the libelants suggests might support the theory of navigability consists of cryptic statements in Geological Surveys of ancient vintage and some references to a book entitled "Tales of the Elk" by the late W. E. R. Byrne.

■ I am of the opinion that this fragmentary "evidence" is not sufficient to carry the jurisdictional day for the libelants. I might say that I am in a position not unlike that of Judge Wilson Warlick who referred to his personal knowledge of the Catawba River in his opinion in the Petition of Howser, D.C., 227 F.Supp. 81 (1964). My personal knowledge of the Elk River goes back some fifty years and from my earliest recollection its navigability extended only a few miles upriver from its confluence with the Kanawha River at Charleston. From the Town of Clendenin, some 16 miles upriver from Charleston and continuing upriver to Sutton and beyond, the Elk River is a succession of shoals, rapids and sandbars, all of which combine to destroy any substantial or genuine usefulness for the purposes of trade and commerce. Conceivably, it might have once been possible to float logs down the river, but other than that any voyage of a substantial economic nature would involve a succession of portages which would destroy its profitable or practicable utility as a channel of commerce.

Understandably, counsel for libelants places heavy reliance upon the case of United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940), and a number of other decisions in which the Court was considering the authority of the Federal Power Commission under the commerce clause of the Constitution rather than admiralty jurisdiction. Quite frankly, I do not consider these cases precisely in point with respect to the jurisdictional question here presented, but in any event, the evidence with respect to navigability for commercial purposes was much stronger and persuasive in the *Ap-*

*palachian* case than the meager references in the instant case.

It is my considered opinion that the libelants have not presented, nor could they present, evidence of navigability that would persuade this Court to open its doors to every aquatic misadventure that might occur in the Sutton Reservoir upon the sole basis of admiralty jurisdiction.

In the light of the foregoing observations it is ordered that this libel be and the same is hereby dismissed.