**UNITED STATES of America**

v.

**WHITE'S FERRY INCORPORATED, and the FERRYBOAT GENERAL JUBAL EARLY, her engines, tackle, etc.**

**Civ. No. 73–1001–Y.**

United States District Court,
D. Maryland.

Sept. 26, 1974.

George Beall, U. S. Atty., and Donald H. Feige, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Dennis M. Ettlin, Rockville, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The United States brings this action against the ferryboat *General Jubal Early*, a vessel said to be within this District, and its owner, White's Ferry, Inc., a Maryland corporation. The Government alleges that the ferryboat and the corporation have violated 46 U.S.C. § 390c (1970), § 12(e) of the Federal Boat and Safety Act of 1971, 46 U.S.C. § 1461(e) (1970), as amended, (Supp. II, 1973), and the Secretary of Transportation's rules with regard to fire extinguishers for passenger carrying barges, 46 C.F.R. § 25.30–10(c) (Supp. 1973). As a consequence of these alleged violations, the Government maintains that defendants are liable to the United States for civil penalties totaling $1,400 in accordance with 46 U.S.C. §§ 390d and 1484(b) & (c).

The Government has styled the case a "penalty case of admiralty and maritime jurisdiction" and has invoked the special maritime procedures of the Federal Rules of Civil Procedure by making reference to Fed.R.Civ.P. 9(h) in the manner suggested by Fed.R.Civ.P. Appendix of Forms, Form 2. *See* 5 C. Wright & A. Miller, Federal Practice and Pro-

cedure, Civil § 1313 (1969). That characterization plus the reference to Rule 9(h) together suggest that the Government believes this Court has jurisdiction over both the Government's in personam action against the corporation and its in rem action against the ferryboat by virtue of its 28 U.S.C. § 1333 admiralty jurisdiction.

The Government and the defendants have filed, respectively, a Rule 56(d) motion for partial summary adjudication [1] and a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Both motions go to the question of whether or not, on the dates of the alleged violations, the ferryboat was operating on a "navigable" river as that term defines the admiralty jurisdiction of the United States.

■ This Court has an obligation to determine whether or not subject matter jurisdiction exists even if the parties fail to raise the question. Therefore, quite apart from the question of navigability, this Court must note sua sponte that section 1333 does not provide subject matter jurisdiction over the Government's attempted libel in personam against the corporation. An action to collect a penalty by a libel in personam does not lie in admiralty. It belongs instead on the law side of the court. *See* United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 250 F. 939,

941 (2d Cir.), cert. denied, 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423 (1918); Virginia & Maryland Steam Navigation Co. v. United States, 28 Fed.Cas. 1229, 1230 (No. 16,973) (C.C.D.Md.1840); *contra,* United States v. Burlington & Henderson County Ferry Co., 21 F. 331, 338 (S.D.Iowa 1884).

■ Were section 1333 the only possible source of subject matter jurisdiction in this action, the Government's suit as to the corporation would have to be dismissed. The Court has two other possible sources of jurisdiction, however, in 28 U.S.C. §§ 1345 & 1355 (1970). The nature of the action against the defendants is clearly within the embrace of these two jurisdictional sources since suit is brought by the United States to collect penalties imposed by Acts of Congress. As Judge Learned Hand noted in a similar situation: "When a cause of action is within the substantive jurisdiction of the District Court for any reason, it does not mar that jurisdiction that the suitor proceeds as libellant in the admiralty rather than as plaintiff at law." Prince Line, Ltd. v. American Paper Exports, Inc., 55 F.2d 1053, 1056 (2d Cir. 1932).[2]

The navigability question posed by the parties' motions is both jurisdictional and substantive in nature. Insofar as the libel in rem is concerned, the Government seeks to establish, and the de-

---

1. The United States moves for a "partial summary judgment." Such a motion is authorized by Fed.R.Civ.P. 56(d). As Professor Wright notes, the phrase "partial summary judgment" is misleading since a judgment is appealable while a Rule 56(d) order is not. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2715, at 421 n. 63 and accompanying text (1973). To avoid confusion, the phrase "partial summary adjudication" preferred by Professor Wright will be used here. *See id.* § 2737, at 681 n. 3 and accompanying text.

2. Given the fact that jurisdiction over the in personam action exists on the law side of this Court and the unification of the admiralty rules with the Federal Rules of Civil Procedure in 1966, the conclusion that the in personam action does not lie in admiralty is

of no great moment. Because the in personam case is at law rather than in admiralty, there was a right to trial by jury. *See* United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 250 F. 939, 941–942 (2d Cir.), cert. denied, 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423 (1918). Fed.R.Civ.P. 38, however, requires a party desiring a jury trial to file a timely written demand. *See* 9 C. Wright & A. Miller, *supra* § 2317, at 84. That time has passed, and the parties have therefore waived their right to jury trial. The waiver is complete even if it was inadvertent. *See* Prince Line, Ltd. v. American Paper Exports, Inc., 55 F.2d 1053, 1056–1057 (2d Cir. 1932); United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 250 F. 939, 941–942; 9 C. Wright & A. Miller, *supra* § 2321, at 102 n. 55 and accompanying text.

fendants, by their Rule 12(b)(1) motion, challenge this Court's section 1333 subject matter jurisdiction. In order to show that this Court does have admiralty jurisdiction the libellant must show that the river in question meets the "test of waters" prerequisite of section 1333 admiralty jurisdiction. *See* G. Gilmore & C. Black, The Law of Admiralty § 1–11, at 28 (1957). That test, as it pertains to this action, is whether or not the Potomac at White's Landing is "navigable in fact." *See id.* at 28–29. The Government's Rule 56(d) motion is substantive in character. The two penalty provisions which the Government is attempting to enforce call for penalties only in those cases where the activity they forbid occurs within the admiralty jurisdiction of the United States.[3] Thus, the two statutes incorporate the existence of admiralty jurisdiction as a substantive element in the penalty cause of action they create. Insofar as the libel in rem is concerned, then, the question of the river's navigability is both jurisdictional and substantive. As to the in personam action, navigability is a substantive question only. The question on both levels can be resolved as one, however, since the Government's Rule 56(d) motion and its accompanying affidavits present uncontradicted facts sufficient to establish, as a matter of law, that the Potomac at White's Landing is navigable in fact and therefore within the admiralty jurisdiction of the United States.

■ Defining the admiralty jurisdiction of the United States is a matter of federal law. *See* United States v. Utah, 283 U.S. 64, 75, 51 S.Ct. 438, 75 L.Ed. 844 (1931); United States v. Holt State Bank, 270 U.S. 49, 55–56, 46 S.Ct. 197, 70 L.Ed. 465 (1926). The definition of navigability employed in Maryland courts and specific decisions by those courts as to the navigability of the Potomac River are not relevant here.

■ The current federal test of navigability is rooted in the formulation set forth in *The Daniel Ball*:

Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade or travel are or may be conducted in the customary modes of trade and travel on water.

77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870). As currently evolved, the federal test of navigability has been characterized as a three-pronged inquiry into the past, present, or future susceptibility of the river in question to commercial use. *See* Kramon, Section 10 of the Rivers and Harbors Act, 33 Md.L. Rev. 229, 237–241 (1973).

■ It may well be that not "[e]very small creek in which a fishing skiff or gunning canoe can be made to float at high water * * * [will be] deemed navigable," United States v. The Montello, 87 U.S. (20 Wall.) 430, 442, 22 L.Ed. 391 (1874), but, as was recently noted in the Southern District of West Virginia, a river with a "capacity for useful interstate commerce of a substantial and permanent nature" is navigable as that term is employed in admiralty. *See* Watring v. Unnamed Inboard Motor Boat No. WV 4488 AB, 322 F.Supp. 1226, 1228 (S.D.W.Va.1971). Indeed, the Supreme Court has held that a man-made canal lying wholly within one state is navigable and within the admiralty jurisdiction of the United States. *See* The Robert W. Parsons, 191 U.S. 17, 24

3. The penalties imposed by 46 U.S.C. § 390d are applicable only to vessels and their owners where such vessels fall within the definitions of 46 U.S.C. § 390(b). As applicable here § 390(b)(1) defines subject vessels as those "operating on the navigable waters of the United States." Likewise, the penalties imposed under 46 U.S.C. § 1484(c) apply only where the vessel in question is used on waters "subject to the jurisdiction of the United States." 46 U.S.C. § 1453(a) (1970), as amended, (Supp. II, 1973).

S.Ct. 8, 48 L.Ed. 73 (1903). Furthermore, the court need not find that the entire river is navigable. Only a segment may be found navigable and within the maritime jurisdiction of the United States. *See* United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931).

The two affidavits accompanying the Government's Rule 56(d) motion indicate that on July 11, 1971 Coast Guard Lieutenant Robert C. North drove a government vehicle onto the ferryboat *Jubal Early* which was then moored on the Virginia side of the Potomac at White's Landing. He and the vehicle were transported on the vessel to the Maryland side of the river. Similarly on February 23, 1972 Coast Guard Lieutenant Gerald W. Abrams attests that he observed the ferry transporting passengers and vehicles between the Maryland and Virginia shores at White's Landing. The affidavits create an inference that the ferry has been engaged in such activities on a continuing basis. The defendants do not deny that the ferryboat has indeed been transporting passengers and vehicles across the Potomac at White's Landing in their answer, response to the Government's motion, or their own motion to dismiss.

■ The uncontradicted affidavits therefore reveal that the Potomac at White's Landing is capable of permitting passage of a vessel considerably larger than a "fishing skiff or gunning canoe," and that the river is used to transport people and vehicles interstate on a continuing, commercial basis. Clearly the federal government has a paramount interest in the safe passage of commerce between two states by water in such situations. The Potomac River at White's Landing is navigable in fact and subject to the admiralty jurisdiction of the United States.

For the reasons stated, it is this 26th day of September, 1974, by the United States District Court for the District of Maryland, ordered:

1. That the motion by the United States for partial summary adjudication be, and the same is, hereby granted, and

2. That the defendants' motion to dismiss be, and the same is, hereby denied.