**Kenneth Leighton MOTLEY, Administrator, Plaintiff,**

v.

**Kermit E. HALE, Defendant.**

**Civ. A. No. 82–0427–R.**

United States District Court, W.D. Virginia.

Feb. 4, 1983.

William W. Terry, III, Roanoke, Va., for plaintiff.

M. Lanier Woodrum, Carroll D. Rea, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

This action involves a fatality arising from a boating accident which occurred on Smith Mountain Lake in Franklin County, Virginia, while the Plaintiff's decedent was being towed on an inner tube behind Defendant's motor boat. Plaintiff brought this action pursuant to the admiralty and maritime jurisdiction of the federal courts.[1] Defendant has moved this Court pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure* to dismiss the action for lack of subject matter jurisdiction. Both

---

1.  U.S. Const. art. III, § 2, cl. 1; and 28 U.S.C. § 1333.

parties have briefed and argued this issue, and it is now before this Court for decision.

The issue before the Court on Defendant's Motion is whether Smith Mountain Lake is a navigable body of water. Plaintiff asserts that the test for determining navigability is an historic test. Plaintiff relies on various Supreme Court and lower court opinions which hold that once a waterway has been navigable in the past, it remains so even though it is not presently used for maritime commerce, nor is such use reasonably anticipated to occur in the future. Defendant, on the other hand, asserts that the concept of navigability varies depending upon the purpose for which it is used. Defendant agrees with Plaintiff's test of navigability when Congress' power under the Commerce Clause of the Constitution is involved but asserts that when admiralty jurisdiction is involved, the test is "current navigability". Defendant argues that for Plaintiff to prove that Smith Mountain Lake is currently navigable for admiralty jurisdiction purposes, he must show that the lake is now used for commercial shipping or that there is a reasonable likelihood that it will be used for that purpose in the future. For the reasons set forth below, I agree with the Defendant.

In *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed. 2d 300 (1982), the United States Supreme Court held that a complaint alleging a boating accident between any vessels, including pleasure craft, which occur on navigable waters properly states a claim within the admiralty jurisdiction of the federal courts. This brought within the purview of the federal court admiralty jurisdiction cases which had heretofore been considered tort actions cognizable only under state law. *Cf., Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The Court's rationale for extending admiralty jurisdiction to embrace all types of vessels which ply navigable waters was to protect maritime commerce by providing a uniform set of rules to govern the activity of all vessels which used those waters.

While the Supreme Court has extended admiralty jurisdiction to virtually all accidents occurring on navigable waters, it has also indicated that the concept of navigable waters is a pragmatic one. In *Kaiser Aetna v. U.S.,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), the Court dealt with the concept of navigability in the context of a taking question. In that case, the Court had to determine the issue of navigability for the purpose of deciding whether Congress could exercise its regulatory authority over a body of water pursuant to the Commerce Clause. In the course of its discussion, the Court disagreed with the positions advanced by the Government that the concept of navigable waters "has a fixed meaning that remains unchanged in whatever context it is being applied." *Id.* at 170, 100 S.Ct. at 388. The Court made the point that not all the Court's pronouncements relating to the scope of the term navigable can "be lumped into one basket." Before one can properly utilize precedent dealing with whether a body of water is navigable, the Court emphasized, one must make a "careful appraisal of the 'purpose' for which the concept of navigability was invoked ...." *Id.* at 171, 100 S.Ct. at 388. The Court went on to list some of those purposes:

"... to define the scope of Congress' regulatory authority under the Interstate Commerce Clause [citations omitted], to determine the extent of the authority of the Corps of Engineers under the Rivers and Harbors Appropriation Act of 1899, and to establish the limits of the jurisdiction of the federal courts conferred by Art. III, § 2, of the United States Constitution, over admiralty and maritime cases." (footnotes omitted)

*Id.* at 171–172, 100 S.Ct. at 388–389.

With the above language as a guide, I hold that when the concept of navigability is applied for the purpose of admiralty jurisdiction, the scope of the concept is limited to "current navigability". To conclude otherwise would push the concept of admiralty jurisdiction over the "edge of absurdity", as mentioned by Justice Powell in his dissent

in the *Foremost* case. *Foremost Insurance Co. v. Richardson,* 457 U.S. at 678, 103 S.Ct. at 2660–2661 (Powell, J., dissenting). I can perceive no purpose in extending the federal courts' admiralty jurisdiction to boating accidents which occur on bodies of water situated entirely within one state and over which there is no maritime commerce. The Court noted in *Foremost* that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce", and that the extension of admiralty jurisdiction to accidents between small pleasure craft is necessary because of the "potential effect of noncommercial maritime activity on maritime commerce". *Id.* at 674–675, 102 S.Ct. at 2658–2659. It, therefore, stands to reason that if a body of water is not in fact used for maritime commerce nor susceptible to such use in its present state, then there is no maritime commerce to be protected. Such a holding is not only consistent with the purposes behind the Court's ruling in *Foremost, supra,* but also, to an extent, alleviates the concerns of the dissenting Justices in *Foremost* by requiring tort actions which have no actual or potential impact on maritime commerce to remain within state court jurisdiction.

This holding is in accord with that of at least three Courts of Appeals. The Seventh, Eighth and Ninth Circuits have all held that the test of navigability for the purpose of admiralty jurisdiction is navigability in fact. *Livingston v. U.S.,* 627 F.2d 165 (8th Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981); *Chapman v. U.S.,* 575 F.2d 147 (7th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Adams v. Montana Power Co.,* 528 F.2d 437 (9th Cir.1975). These cases all involve facts similar to those in the present case and the reasoning of those cases applies equally well to the present case. While the actual formulation of the test for navigability differs from case to case, they are all basically in accord with the test enunciated in *Chapman:*

> "... a recreational boating accident does not give rise to a claim within the admiralty jurisdiction when it occurs on waters that ... are not in fact used for commercial navigation and are not susceptible of such use in their present state."

*Chapman v. U.S.,* 575 F.2d at 151.

Plaintiff directs my attention to a long line of cases which Plaintiff contends demonstrate that the proper test for determining whether admiralty jurisdiction exists is one of historic navigability. Even assuming that every case Plaintiff cites defines "navigability" as historic navigability, I must go further and determine the purpose for which the term "navigability" was used in the cases since, as stated above, I am of the opinion that the concept of navigability is a pragmatic one and varies depending upon the purpose for which it is used.

A careful examination of the cases Plaintiff cites in his Memorandum reveals that almost every case (at least all the Supreme Court and Fourth Circuit cases) involved either the direct exercise of Congress' power, pursuant to the Commerce Clause of the Constitution [2], *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870); *The Montello,* 87 U.S. (20 Wall.) 430, 22 L.Ed. 391 (1874); *Economy Light and Power Co. v. U.S.,* 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921); *U.S. v. Appalachian Electric Power Co.,* 311 U.S. 377, 311 U.S. 377, 85 L.Ed. 243 (1940); *U.S. v. White's Ferry, Inc.,* 382 F.Supp. 162 (D.Md.1974), or indirect exercise of its power by delegating it by statute to the Corps of Engineers, *State Water Control Board v. Hoffman,* 427 F.Supp. 585 (W.D.Va.1977), *aff'd in part, rev'd in part,* 574 F.2d 191 (4th Cir.1978); *U.S. v. Crow, Pope and Land Enterprises, Inc.,* 340 F.Supp. 25 (N.D.Ga.1972). As to those cases which might arguably stand for the proposition advanced by the Plaintiff, I note that none of them discuss the distinction made in *Kaiser Aetna v. U.S., supra,* with respect to the various purposes for which navigability is used. Nor do they discuss the rule stated in the three Circuit Court cases, noted *supra,* that the test for admiralty jurisdiction is "current navigabil-

**2.** U.S. Const. art. I, § 8, cl. 3.

ity". *Jones v. Duke Power Co.,* 501 F.Supp. 713 (W.D.N.C.1980); *Sawczyk v. U.S. Coast Guard,* 499 F.Supp. 1034 (W.D.N.Y.1980); *Watring v. Unnamed Inboard Motor Boat,* 322 F.Supp. 1226 (S.D.W.Va.1971).

I distinguish the cases upon which Plaintiff principally relies because they employed the term "navigability" for a purpose other than determining admiralty jurisdiction. The distinction is important because the policy behind defining navigability for Commerce Clause, etc. purposes is different from the policy relating to admiralty jurisdiction. The Ninth Circuit in *Adams v. Montana, supra,* discussed the policy reasons behind the changing definitions of navigability as they relate to Congress' power under the Commerce Clause and federal court jurisdiction of admiralty cases:

> "Congress' commerce power is designed in part to preserve and protect the nation's waterways which in their natural condition are navigable in interstate commerce. [citation omitted] By virtue of this power, Congress may prevent or regulate obstruction of these waterways by the states through which they pass. [citation omitted] The damming of a previously navigable waterway cannot divest Congress of its control over a potentially useful artery of commerce, since such obstructions may always be removed. Hence the courts have reasonably held that a navigable river is not rendered non-navigable by artificial obstruction.
>
> However, if the damming of a waterway has the practical effect of eliminating commercial maritime activity, no federal interest is served by the exercise of admiralty jurisdiction over the events transpiring on that body of water, whether or not it was originally navigable ... Only the burdening of the federal courts and the frustrating of the purposes of state tort law would be thereby served."

*Id.* at 440–441. I agree with this reasoning.

Plaintiff relies heavily on *State Water Control Board v. Hoffman,* 427 F.Supp. 585 (W.D.Va.1977), *aff'd in part, rev'd in part,* 574 F.2d 191 (4th Cir.1978), arguing that this Court (Western District of Virginia—Judge Turk) has already determined that Smith Mountain Lake is navigable; that the Fourth Circuit has affirmed the finding and that should be the end of the inquiry. But Plaintiff's argument misses the mark. First, *Hoffman* dealt with the concept of navigability for the purpose of determining whether the Rivers and Harbor Act of 1899, 33 U.S.C. §§ 401, 403, was applicable to Smith Mountain Lake; the question of admiralty jurisdiction was not before the Court. Second, and perhaps more important, the Fourth Circuit reversed this Court on its finding of current navigability, holding that Smith Mountain Lake was not currently navigable. As pointed out above, I am of the opinion that current navigability, not historic navigability, is the appropriate test for determining admiralty jurisdiction.

Accordingly, the Defendant's Motion to Dismiss is hereby GRANTED with Plaintiff granted leave to introduce evidence to show the susceptibility of Smith Mountain Lake for use in maritime commerce.[3]

---

**3.** In the oral argument of this case, counsel agreed that the Court could take judicial notice of the facts found by the District Court as amended by the Fourth Circuit in *State Water Control Board v. Hoffman, supra,* but counsel for the Plaintiff reserved the right to introduce additional evidence on the issue of whether Smith Mountain Lake, on the date of the accident, was in fact used for commercial navigation or susceptible of being so used.