In re Dwight L. DEAN, Debtor.

BLUE RIDGE RECREATION,
INC., Plaintiff,

v.

Dwight L. DEAN, et al., Defendants.

Bankruptcy No. 7–83–01395.
Adv. No. 7–84–0132.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Nov. 27, 1985.

Jolly, Place, Fralin & Prillaman, Roanoke, Va., for debtor/defendant.

Key & Tatel, Roanoke, Va., for plaintiff.

Copenhaver & Ellett, Roanoke, Va., for defendant Colonial American Bank.

John Alderson, U.S. Atty., W.D. Va., Roanoke, Va., for U.S. Coast Guard.

Michael J. Aheron, Salem, Va., Trustee/defendant.

MEMORANDUM OPINION
AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is a determination of the validity, extent, and priority

of liens on the proceeds from sale of an asset of the Debtor.

The Debtor filed his Chapter 7 petition in this Court on December 22, 1983. On June 18, 1984, this Court entered an Order directing sale of a 38-foot Criscraft boat named "The Destiny", an asset of the estate, for the sum of $5,000.00 cash, which is held by the Trustee subject to any liens that Blue Ridge Recreation, Inc., the Plaintiff herein, may have against the boat. Colonial American National Bank ("Colonial American") also claims a security interest in the boat.

On July 12, 1984, the Plaintiff filed this adversary proceeding against the Debtor, the Trustee, and Colonial American. Plaintiff seeks a determination that its claim for services performed on the boat and rental and storage fees were valid and superior to the interest of Colonial American. It contends that it is entitled to the entire amount of the proceeds in satisfaction of its claim for $5,027.29. The Plaintiff has also made application for allowance of administrative expenses in the sum of $797.50 for rental and maintenance fees that have accrued since the filing of the petition in this Court.

The Debtor contends that the amount of the indebtedness is only in the neighborhood of $1,500.00, and seeks dismissal from the suit. The Trustee denies that Colonial American has a security interest in the boat or that Plaintiff has a lien. Colonial American contends that Plaintiff did not have a lien or, alternatively, any lien is inferior to that of Colonial American.

The Court heard evidence on October 29, 1984, at which time the Plaintiff presented an itemized statement indicating rental and storage fees and charges for supplies and services rendered on the vessel for a total amount of $5,027.29. Individual receipts for the supplies and services were also tendered.[1] Colonial American introduced into evidence a copy of a security agreement naming the boat as collateral and securing an interest in any proceeds of the collateral. Two Financing Statements were also tendered, indicating filing with the State Corporation Commission in Richmond and the Office of the Clerk of the Circuit Court of the City of Roanoke. The matter was taken under advisement. Counsel were requested to tender an Order, subsequently entered, requiring a representative of the United States Coast Guard in charge of documentation to produce or file Certified copies of documents indicating registration of the boat with the Coast Guard. Such documentation was alleged to be necessary to the claim of the Plaintiff in order to show that the case is one arising under admiralty law. No documents have been produced, and the parties have not sought further enforcement of this Court's Order to produce. In September, 1985, Counsel for Plaintiff and Colonial American filed letters indicating that no documents would be filed and requesting the Court to rule on the evidence presented. Further hearing was held on November 18, 1985, and the matter was taken under advisement for determination.

■ Counsel for Blue Ridge Recreation contends that admiralty law governs the disposition of this case. 28 U.S.C. § 1333 grants the District Courts "original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." § 1333(1). The test of admiralty jurisdiction under § 1333 is whether the body of water is navigable. *Bond v. Doig*, 433 F.Supp. 243 (D.C. NJ 1977). Waters are navigable when they are, in their ordinary condition, used or susceptible of use as highways for commerce, over which trade and travel may be conducted in their customary modes. 2 *Am.Jur.*2d, *Admiralty* § 22.

---

1. A detailed examination of the itemized statement of fees for rental and services in the amount of $5,027.29 indicates that it includes charges for three months slip rent for December, 1983, January, 1984, and February, 1984, which are also set forth in the accounting submitted with the motion for allowance of administrative expenses. To the extent that this represents a duplication in charges, the Plaintiff's claim should be reduced accordingly.

In applying the concept of navigability, early Supreme Court cases have taken a position of historic navigability, *i.e.*, once a waterway has been navigable in the past, it remains so even though it is not presently used for maritime commerce. *See The Daniel Ball,* 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870); *The Montello,* 87 U.S. (20 Wall.) 430, 22 L.Ed. 391 (1874); *Economy Light and Power Co. v. U.S.,* 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921); *U.S. v. Appalachian Electric Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). The Fourth Circuit found this historical use appropriate in *State Water Control Board v. Hoffman,* 574 F.2d 191 (4th Cir.1978), *affirming in part, reversing in part* 427 F.Supp. 585 (W.D.Va.1977).

More recently, the Supreme Court has indicated that the concept of navigable waters is a pragmatic one. In *Kaiser Aetna v. U.S.,* 444 U.S. 164, 170, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979), the Court rejected the argument that the concept of navigable waters "has a fixed meaning that remains unchanged in whatever concept it is being applied." It is necessary to make a "careful appraisal of the 'purpose' for which the concept of navigability was invoked ..." *Id.* at 171, 100 S.Ct. at 388.

In recent decisions, three Circuit Courts of Appeals have found that the appropriate test for navigability for purposes of admiralty jurisdiction is navigability in fact. *See Livingston v. U.S.,* 627 F.2d 165 (8th Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981); *Chapman v. U.S.,* 575 F.2d 147 (7th Cir.1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Adams v. Montana Power Co.,* 528 F.2d 437 (9th Cir.1975). In *Motley v. Hale,* 567 F.Supp. 39 (W.D.Va. 1983), the United States District Court for the Western District of Virginia reached the same conclusion. The *Motley* case involved the question of admiralty jurisdiction with respect to a fatality arising from a boating accident which occurred on Smith Mountain Lake. Having reviewed the Circuit Court decisions and the language of *Kaiser Aetna,* the court concluded that current navigability rather than historic

navigability is the appropriate test for determining admiralty jurisdiction. The court did not feel bound by the Fourth Circuit's language in *Hoffman* on historic navigability. According to the court, the *Hoffman* Opinion was distinguishable for, in that case, the question of admiralty jurisdiction was not before the court.

■ In light of the findings in *Motley* and *Hoffman,* we conclude that Smith Mountain Lake, the location where the subject collateral was stored, is not navigable in the sense of current navigability to invoke admiralty jurisdiction. "If the damming of a waterway has the practical effect of eliminating commercial maritime activity, no federal interest is served by the exercise of admiralty jurisdiction over the events transpiring on that body of water, whether or not it was originally navigable ..." *Adams v. Montana Power Co., supra,* at 440–1.

In order to determine the validity and priority of liens in this case, it is first necessary to determine whether state or federal law will govern the interests. *Virginia Code* § 8.9–104(a) of the *Uniform Commercial Code* states in part that "This title does not apply to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920 ..." 46 U.S.C. §§ 911–984 comprise the Ship Mortgage Act, 1920. The statute governs mortgages on vessels registered or enrolled as vessels of the United States, provides for recordation of bills of sale, conveyances, and maritime liens for necessities. Section 971 of the Act provides that:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel ..."

The effect of 46 U.S.C. § 911, *et seq.,* is to supersede the provisions of all state statutes conferring liens on vessels, insofar as such statutes purport to create rights of

action to be enforced by suits *in rem* in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries. 46 U.S.C. § 975; *Rounds v. Cloverport Foundry and Machines*, 237 U.S. 303, 35 S.Ct. 596, 59 L.Ed. 966 (1915) (effect of Federal Maritime Lien Act is to supersede state legislation regarding liens for repairs, supplies, and other necessaries); *The Juniata*, 277 F. 438 (D.C.Md.1922); *The F.S. Loop*, 63 F.Supp. 105 (D.C.Ca.1945).

However, the Federal Ship Mortgage Act, 1920, 46 U.S.C. §§ 911–984, applies only to larger vessels; so-called "undocumented" vessels are not within the federal statute. Smaller commercial vessels and pleasure vessels are "undocumented". 68 *Am.Jur.*2d, *Secured Transactions* § 30 (1973). The financing of pleasure craft and yachts, except those of rather large size, is within the *Uniform Commercial Code*. *Id.*

■ The boat in this case is a pleasure boat which was used by the Debtor for recreational purposes. The provisions of the Ship Mortgage Act, 1920, including § 971 creating maritime liens, are not applicable to it. Since the Act does not govern, the transaction is not excluded under the language of *Virginia Code* § 8.9–104(a). Accordingly, Article 9 of the *Uniform Commercial Code* will control the creation, validity, and priority of a security interest in the property.

■ As in any secured transaction, it is necessary to classify the collateral and determine where filing is appropriate. The Debtor's boat can be classified as a consumer good in that as a recreational vehicle, it was "used or bought for use primarily for personal, family, or household purposes." *Virginia Code* § 8.9–109(1). Under *Virginia Code* § 8.9–401(1)(a), the proper place to file in order to perfect a security interest in consumer goods is "in the Office of the Clerk of the Court in which deeds are admitted to record in the County or City of the debtor's residence." Colonial American has properly perfected its security interest in the vessel. A copy

of one of the Financing Statements introduced into evidence indicates that it was filed on September 12, 1979 in the Office of the Clerk of the Circuit Court of Roanoke City, where the Debtor resides. Thus, Colonial American had a valid, perfected security interest in the collateral as of that date.

■ Given that 46 U.S.C. § 971, the provision of the Ship Mortgage Act, 1920, creating a maritime lien, is inapplicable, state law will govern the priority of liens. *Virginia Code* § 43–32 (Repl.Vol.1981) outlines the liens given to keepers of livery stables, garages, and marinas for services provided to property left in their possession. It provides a monetary limit on the amount such lienholders are to receive before satisfaction of security interests in the property. At the time of the transactions between the Debtor and the Plaintiff, *Virginia Code* § 43–32 provided that:

> "Every keeper of a livery stable, marina, or garage, and every person pasturing or keeping any horses or other animals, vehicles, boats, and harness, shall have a lien upon such horses and other animals, vehicles, boats, and harness, for the amount which may be due him for keeping, supporting and care thereof, until such amount is paid; provided, however, that *in the case of any boat or vehicle which is subject to a chattel mortgage, security agreement,* Deed of Trust, or other instrument securing money, *the keeper of the marina or garage shall have a lien thereon for his just and reasonable charges for storage under this section to the extent of one hundred fifty dollars and for alteration and repair under § 43–33 to the extent of one hundred fifty dollars, and in addition, such keeper shall be entitled to a lien against the proceeds, if any, remaining after the satisfaction of all prior security interests or liens ...*". (emphasis added)

Effective July 1, 1984, *Virginia Code* § 43–32 was amended, substituting the sum of $500.00 for the amount of $150.00

for alteration and repairs under § 43–33. The $150.00 amount for storage remained unchanged.

Under the provisions of *Virginia Code* § 43–32, Plaintiff Blue Ridge Recreation has a lien to the extent of $150.00 for reasonable charges for storage of the boat in this case. The question arises as to the amount the Plaintiff is entitled to under *Virginia Code* § 43–32 for alterations and repairs, *i.e.*, the $150.00 amount provided for when the transactions took place, or the $500.00 amount in effect when this adversary proceeding was filed in this Court.

It is recognized that rights accrued, claims arising, proceedings instituted, and orders made under a law before the passage of an amended statute will not be affected by the amendment, but will be governed by the original statute, unless a contrary intention is expressed in the later statute. *Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 30 S.E.2d 686 (1944); 17 *Michie's Jurisprudence*, Statutes, § 87. *See also* 17 *Michie's Jurisprudence*, Statutes, § 86 (an amendment to a statute cannot be retroactive unless plainly made so by the terms of the amendment). The claims in this case for alterations and repairs to the boat giving rise to a lien arose before the passage of the 1984 amendment. There is no indication in the statute itself or the annotations to *Virginia Code* § 43–32 discussing the amendment which indicate that the amendment is to apply to claims arising before its enactment. As such, the amount to which the Plaintiff is entitled as a lien for repairs and services under *Virginia Code* § 43–32 is the amount of $150.00 in the statute as it read when the services were provided.[2]

Accordingly, it is

2. Our decision to apply the law in *Virginia Code* § 43–32 as it read prior to amendment is not contrary to the holding of *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Bradley*, a case involving desegregation of public schools in Richmond, Virginia, the Supreme Court stated that "a court is to apply the law in effect at the time it renders a decision, unless doing so would

ADJUDGED and ORDERED that the Trustee, after deducting Trustee's commissions and administrative expenses related thereto, distribute the sum of $300.00 to the Plaintiff for its liens for storage and alteration and repair under *Virginia Code* § 43–32. Thereafter, Colonial American is entitled to satisfaction of its security interest. Any surplus funds which may remain are to be distributed to the Plaintiff in further satisfaction of its claim as provided for in *Virginia Code* § 43–32.

result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. *See also Hughes v. Heyl and Patterson, Inc.*, 647 F.2d 452, 454 (4th Cir.1981). In making this statement, the court was addressing the issue of a change in law occurring while a case is pending on appeal. The case at bar is distinguishable in that it presents a change in law prior to the filing of the case.