574 F.2d 191
 8 Envtl. L. Rep. 20,358
 STATE WATER CONTROL BOARD, an Agency of the Commonwealth of
Virginia, Appellant,
v.
Martin R. HOFFMANN, Secretary of the Army, Lt. General
William C. Gribble, Chief, the Army Corps of
Engineers and Col. Homer Johnstone,
District Engineer, Wilmington
District, Appellees.
 No. 77-1396.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 16, 1977.
Decided April 19, 1978.
 
 Frederick S. Fisher, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, James E. Ryan, Jr., Deputy Atty. Gen. and David E. Evans, Asst. Atty. Gen., Richmond, Va., on brief), for appellant.
 Dirk D. Snel, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Acting Asst. Atty. Gen., Washington, D. C., Paul R. Thomson, Jr., U. S. Atty., Roanoke, Va., Edmund B. Clark and John E. Varnum, Attys., Dept. of Justice, Washington, D. C., on brief), for appellees.
 Before FIELD, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.
 FIELD, Senior Circuit Judge:
 
 
 1
 In this action for declaratory and injunctive relief the Virginia Water Control Board challenged the jurisdiction asserted by the Army Corps of Engineers over Smith Mountain Lake under Sections 9 and 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401, 403.[1] The primary issue in the district court was the status of the lake as a "navigable water of the United States," since such a finding of navigability is a prerequisite for the Corps' exercise of regulatory authority.[2] Upon the evidence presented at trial, the district court concluded that Smith Mountain Lake was a navigable water of the United States and that the lake did not fall within the exception provided by Section 154 of the Water Resources Development Act of 1976, 90 Stat. 2917, 2932, 33 U.S.C. § 59l.[3] Accordingly, the court dismissed the complaint and the Board has appealed.
 
 
 2
 Smith Mountain Lake, stretching forty miles through Bedford, Franklin and Pittsylvania Counties, Virginia, was created in 1964 when Smith Mountain Dam impounded the waters of the Upper Roanoke River as part of a federally licensed hydroelectric power project. The dam was constructed some three miles upstream from the confluence of the Pigg and Roanoke Rivers. The Roanoke River rises in the mountains of Virginia west of the City of Salem, and prior to the impoundment meandered unremarkably some sixty-four miles to its junction with the Pigg River. The volume of the river's flow was increased considerably by the waters of the Pigg and was gradually expanded by tributaries over the next one hundred miles to its confluence with the Dan River, a short distance upstream from the City of Clarksville, Virginia. From that point the river flows through Virginia and North Carolina and discharges into Albemarle Sound.
 
 
 3
 Based upon the evidence which focused almost entirely upon historic use, the district court concluded that the reach of the river here in question met the test of navigability under the classic definition of The Daniel Ball, 77 U.S. (10 Wallace) 557, 19 L.Ed. 999 as refined and explicated in United States v. Appalachian Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). While the evidence clearly supported a finding of navigability of the Roanoke River from Albemarle Sound up to the confluence of the Roanoke and the Pigg, there was a sharp dispute with respect to its navigability from the Pigg River upstream to the Roanoke's headwaters west of Salem.[4] Despite such a dispute, however, there was evidence in the record which supports the finding of the district court, and recognizing the principle that "(w)hen once found to be navigable, a waterway remains so,"[5] we cannot say that such a finding was clearly erroneous.
 
 
 4
 While we sustain the finding of navigability, we think the district court erred in its conclusion that Smith Mountain Lake was not exempt from the Corps' permit program under Section 154 of the Water Resources and Development Act of 1976, 33 U.S.C. § 59l, which provides as follows:
 
 
 5
 The prohibitions and provisions for review and approval concerning wharves and piers in waters of the United States as set forth in section (10 of the Rivers and Harbors Act of 1899) * * * shall not apply to any body of water located entirely within one State which is, or could be, considered to be a navigable body of water of the United States solely on the basis of historical use in interstate commerce.
 
 
 6
 It was the principle of historical usage and its operational effect in the context of the Corps' Section 10 jurisdiction which led to the enactment of Section 154.
 
 
 7
 Section 10 of the Act of March 3, 1899, requires a permit from the Secretary of the Army for the placing of any structure in a navigable water of the United States. One of the recognized tests for determining navigability is historical use. Applying this test, the Corps of Engineers has designated many bodies of water as navigable waters solely on the basis of historical use for interstate commerce. As a result, lakes located entirely in one State, not presently capable of being used for interstate commerce, and not capable of being reasonably improved in order to be used for interstate commerce have nevertheless been designated as navigable solely on the basis of historical use, such as fur trading or logging many years ago. H.R.Rep.No.1702, 94th Cong. 2nd Sess. 113 (1976).
 
 
 8
 The 1976 legislation was designed to relieve property owners from the burden of obtaining permits for the construction of wharves and piers in intrastate waters which could qualify as navigable only on the basis of historical activity. The remarks of Congressman Hagedorn of Minnesota clearly defined the purpose of the legislation:
 
 
 9
 The historical-use concept includes within the framework of Corps authority under the 1899 Act those bodies of water which are deemed navigable only because they were navigable at some time in the past. Thus, a body of water may be currently unfit for navigation, and not susceptible to navigation through reasonable improvement, but will be brought within the Act's purview because it may have been used by a dozen traders two centuries ago.
 
 
 10
 At the same time, the requirement that the body of water form a continuous waterway between States was transformed into the simple requirement that the waterway in conjunction with other forms of transportation form a continuous transportation link between States. Thus, a body of water, completely land locked within the borders of a single State might be found to possess an interstate character if a federal highway or railroad line ran adjacent to it. Under this farfetched definition, it is difficult to conceive of many bodies of water which would not qualify for federal supervision.
 
 
 11
 The Corps has increasingly expended time and effort in imposing its permit requirements upon purely recreational, intrastate waters over which no navigation could conceivably traverse, entwining property owners along the shores of these waters in an elaborate body of federal regulations and red tape.
 
 
 12
 Congressional Record, September 29, 1976, H 11639.
 
 
 13
 In declining to apply the Section 154 exemption to Smith Mountain Lake, the district court observed that its conclusion of navigability was premised upon the present navigational capability of the river as well as its historical use, and that a lake created by impoundment of an interstate river could not be deemed "any body of water located entirely in one state" within the meaning of the statute. The record discloses little or no evidence which would support a finding of navigability of the subject reach of the Roanoke River based upon its present capability, and we reject such a finding of present capability as clearly erroneous. With respect to the construction of the term "body of water," we see no reason to modify the language of Congress by adding the word "natural" to that statutory phrase. In our opinion Section 154 applies by its terms to bodies of water, both natural and artificial, which are located entirely within a single state, and it occurs to us that Smith Mountain Lake is precisely the type of aquatic enclave to which the statute is addressed.
 
 
 14
 Accordingly, the order of dismissal is vacated, and the case is remanded for entry of a judgment in accordance with this opinion.
 
 
 15
 VACATED and REMANDED.
 
 
 
 [1]
 Sections 9 and 10 read in pertinent part as follows:
 (Section 9) It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any * * * navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army.
 (Section 10) The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any * * * navigable river, or other water of the United States, * * * except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army.
 
 
 [2]
 Although the complaint of the Board facially sought relief declaring Smith Mountain Lake to be subject to Virginia's exclusive control, the district court recognized that the scope of the controversy was limited to the power of the Corps to establish permit requirements under the 1899 Act, and observed that federal authority under such statutes as the Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1254, et seq., as well as the jurisdiction of the Federal Power Commission under 16 U.S.C. § 797(e), was not implicated in this case. We agree with the observation of the district court on the limited scope of this litigation
 
 
 [3]
 State Water Control Bd. v. Hoffman, 427 F.Supp. 585 (W.D.Va.1977)
 
 
 [4]
 In October of 1964, the United States Coast Guard recommended that Smith Mountain Lake be declared to be a non-navigable water of the United States based upon its investigation of the historic use of the river upstream from its confluence with the Pigg. In a status report in March of 1965, the Coast Guard determined that the Roanoke River from its mouth to Smith Mountain Dam was part of the navigable waters of the United States, but that from that point on to its source, the river was not navigable. The Bureau of Customs concurred in that determination by letter of March 8, 1965
 
 
 [5]
 311 U.S. 408, 61 S.Ct. 299