Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 This court held in the case of
 
 The Daniel Ball,
 

 *
 

 that'those rivers' must be regarded as public, navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used,, or are susceptible of being used, in their ordinary condition,-as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And a river is a navigable water of the United States when it forms by itself, or by its connection with other waters, a continued highway over which commerce is, or may be, carried with other States or foreign countries in the customary modes in which such commerce is conducted by'water.
 
 †
 
 Apply these tests to the case in hand, and we think the question must be answered in tbe affirmative.
 

 The Fox River has its source near Portage City, Wisconsin, and flows, in a northeasterly direction, through Lake Winnebago into Green Bay, and thence into Lake Michigan, and by means of a short canal of a mile and a half it is connected at Portage City with the Wisconsin River, which empties into the Mississippi. From its source to Oshkosh the river is frequently spoken of as the “ Upper Fox.” From Lake Winnebago to Green Bay it is called the “Lower Fox.” Thfere are several rapids and falls in the-river, but the obstructions caused by them have been removed by arti
 
 *440
 
 ficial navigation, so that there is now, and has been for several years, uninterrupted water communication for steam vessels of considerable capacity from the Mississippi to Lake Michigan, and thence to the St. Lawrence, through the Wisconsin and Fox Rivers; and steamboats have passed, and are constantly passing, over these rivers with passengers and freight destined to points and places outside of the State of Wisconsin.
 

 It is said, however, that although the Fox River may now be- considered a highway for commerce, over which trade and travel are, or may be, conducted in the ordinary modes of trade and travel oh water, it was not so in its natural state, and, therefore, is not a navigable water'of the United States within the purview of the decisions referred to.
 

 It is true, without the improvements by locks, canals, and dqms, Fox River, through its entire length, could not be navigated by steamboaté or sail vessels, but it is equally true that it formed, in connection with the Wisconsin, one of the earliest and most important channels pf communication between the Upper Mississippi and the lakes. It was this route which Marquette and Joliet took in 1673 on their voyage to discover the Mississippi; and the immense fur trade of the Northwest was carried over.it for more than a century.
 
 *
 
 Smith,in his History of Wisconsin,
 
 †
 
 says: “At this time (1718) the three great avenues from the St. Lawrence to the Mississippi were, one by the way of the Fox and Wisconsin Rivers, one by way of Chicago, and one by the way of the Miami of the Lakes, when, after crossing the portage of three leagues over the summit level, a shallow' stream led into the Wabash and Ohio.” It is, therefore, apparent that it was one of the highways referred to in the Ordinance of 1787, and, incfceed, among the most favored on account of the short portage between the two rivers, In more modern times, and since the settlement of the country., and before the improvements resulting in an unbroken navi
 
 *441
 
 gation were undertaken, a large interstate commerce has been successfully carried on through this channel. This was done by means of Durham boats, which were vessels from seventy to one hundred feet in length, with twelve feet beam, and drew when loaded two to two and one-half feet of water. These boats, propelled by animal power, were able to navigate the entire length of Fox River, with the aid of a few portages, and would readily carry a very considerable tonnage.
 

 In process of time, as Wisconsin advanced imwealth and population, and had a variety of products to exchange for the commodities of sister States and foreign nations, Durham boats were found to be inadequate to the wants of thé country, and Congress was appealed to for aid to improve the navigation of the river, so that steam power could be used. This aid was granted, and since the fiver was improved commerce is carried over it in one of the usual ways in which commerce is conducted on the water at the present day. But commerce is conducted on the water, even at the present day, through other instrumentalities than boats propelled by steam or wind. And, independently of the Ordinance of 1787, declaring the “navigable waters” leading into the Mississippi and St. Lawrence to be “ common highways,” the true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation. If this were so, the public would be deprived of the use of many of the large rivers of the country over which rafts of lumber of great value are constantly taken to market.
 

 It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true, criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable-in its natural state of being used for purposes of commerce, no matter in what mode .the commerce may be conducted, it is navigable in fact, and be
 
 *442
 
 comes in law a public river or highway. Vessels of. any kind that can float upon .the water, whether propelled by animal power, by the wind, or by the agency of steam, are, or may become, the mode by which a vast commerce can be conducted, and it would be a mischievous rule that would exclude either in determining the navigability of a river. It is not, however, as Chief Justice Shaw said,
 
 *
 
 “every small creek in which a fishing skiff’ or gunning canoe can be made to float at high water which is deemed navigable, but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture.”
 

 The learned judge of the court below rested his decision against the navigability of the Fox River below the De Pere Rapids chiefly on the ground that there were, before the river was improved, obstructions to an unbroken navigation. This is true, and these obstructions rendered'the navigation difficult, and prevented the adoption of the modern agencies by which commerce is conducted. But with these difficulties in the way commerce was successfully carried on, for it .is in proof that the products of other States and countries were taken up the river in its natural state from Green Bay to Fort Winnebago, aud return cargoes of lead and furs obtained. And the customary mode by which this was done was Durham boats. As early as May, 1838, a regular line of these boats was advertised to run from Gre.en Bay to the Wisconsin portage.
 
 †
 
 But there were difficulties in the way of rapid navigation even with Durham boats, and these difficulties are recognized in the Ordinance of 1787, for not only wrnre the “navigable waters” declared free, but also the “carrying-places” between them, that is, places where boats must be partially or wholly unloaded and their cargoes carried on laud to a greater or less distance. Apart from this, however, the rule laid down by the district judge as a test of navigability cannot be adopted, for it would exclude many of the great rivers of the country which were so interrupted by rapids as to require artificial meaus to enable
 
 *443
 
 them to be navigated without break. Indeed, there are but few of our fresh-water rivers which did not originally present serious obstructions to an uninterrupted navigation. In some cases, like the Fox River, they may be so great, while they last as to prevent the use of the best instrumentalities for carrying on commerce, but the vital and essential point is whether the natural navigation of the river is such that it affords a channel for useful commerce. If this be so the river is navigable in fact, although its navigation may be encompassed with difficulties by reason of natural barriers, such as rapids and sand-bars.
 

 The views that we have presented on this subject receive support from the courts of this country that have had occasion to discuss the question of what is a navigable stream.
 
 *
 

 From what has been said, it follows that Fox River is within the rule prescribed by this court in order to determine whether a river is a navigable water of the United States. It has always been navigable in fact, and not- only capable of use, but actually used as a highway for commerce, in the only mode in which commerce could be conducted, before the navigation of the river was improved. Since this was done, the valuable trade prosecuted on the river, by the agency of steam, has become of national importance. And emptying, as it does, into Green Bay, it forms a continued highway for interstate commerce. The products of other States and foreign countries, which arrived at Green .Bay for points in the interior, were formerly sent forward in Durham boats,, and since the completion of the improvements on the river these products are reshipped in a small class of steamboats. It would be strange, indeed, if this difference in the modes of conducting commercé, both of
 
 *444
 
 which, at the times they were employed, were adapted to the necessities of navigation, should.operate a change upon the national character of the stream.
 

 Before the Union was formed, and while the French were jn possession of the territory, the Wisconsin and Fox Rivers constituted about- the only route of trade and travel between the Upper.Mississippi and the great lakes. And since the territory belonged to us this route has been regarded of national importance. To preserve the national character of all the rivers leading into the Mississippi and St. Lawrence, and to'prevent a monopoly of their waters, was the purpose of the Ordinance of 1787, declaring them to be free to the public,; and so important was the provision of this ordinance deemed by Congress that it was imposed on Wisconsin as a condition of admission into the Union.
 

 Congress, also, when the State was admitted, made to it a grant of lands, in order that the Fox and Wisconsin might be united by a canal, their navigation improved, and the rivers made in fact, what nature meant they should be, a great avenue for trade between the Mississippi and Lake Michigan. Tho grant was accepted, the navigation improved, and the canal constructed. These objects were, however, accomplished by^a private corporation chartered for the purpose, which was allowed to charge tolls as a source of profit. Tho exaction of these tolls created dissatisfaetion outside of the State, and Congress, in 1870, in response to memorials on the subject of the importance of these rivers as a channel of commerce between the States, passed an act authorizing the General government to purchase the property, and after it was reimbursed for advances, to reduce'the tolls to the lowest point which should be ascertained to be sufficient to operate the works and' keep them in repair.
 
 *
 
 Although this legislation was not needed to establish the navigability of these rivers, it shows the estimate put by Congress upon them as a medium of communication between the lakes aud the Upper Mississippi.
 

 
 *445
 
 It results from these views that'steam boats navigating the waters of the Fox River are subject to governmental regulation.
 

 Decree reversed, and cause remanded for further proceedings,
 

 In conformity with this opinion.
 

 *
 

 10 Wallace, 557.
 

 †
 

 The Montello, 11 Id. 411;
 

 *
 

 Parkman’s Discovery of the Great West, 52
 
 et seq.;
 
 3 Bancroft’s History of the United States, 156, 157.
 

 †
 

 Volume 1, page 81.
 

 *
 

 21 Pickering, 344.
 

 †
 

 Doty
 
 v.
 
 Strong, 1 Pinney, 316.
 

 *
 

 Moore
 
 v.
 
 Sanborn, 2 Michigan, 519; Brown
 
 v.
 
 Chadbourne, 31 Maine, 1; People
 
 v.
 
 Canal Appraisers, 33 New York, 461; Morgan
 
 v.
 
 King, 35 Id. 459; Flanagan
 
 v.
 
 Philadelphia, 42 Pennsylvania State, 219; Monongahela Bridge Co.
 
 v.
 
 Kirk, 46 Id. 112; Cox
 
 v.
 
 The State, 3 Blackford, 193; Hogg v. Zanesville Canal Co., 5 Ohio, 410; Hickok
 
 v.
 
 Hine, 23 Ohio State, 527; Jolly
 
 v.
 
 Terre Haute Bridge Co.; 6 McLean, 237; Rowe
 
 v.
 
 The Granite Bridge Co., 21 Pickering, 346; Illinois River Packet Co.
 
 v.
 
 Peoria Bridge Co., 38 Illinois, 467; Harrington
 
 v.
 
 Edwards, 17 Wisconsin, 586.
 

 *
 

 16 Stat. at Large, 189.