Petition of Morgan T. JOHNSON, Sr., and Marg (Mary) H. Johnson, for exoneration from or limitation of liability as owners of a Mercury Sabre 16-foot Hull, Inboard Motor-Boat, State of Oregon State Marine Board Title No. 5209

v.

Marilyn H. WURTHMAN, Marilyn H. Wurthman, Administratrix of the Estate of Michael David Wurthman, Deceased, and Morgan Johnson, Jr., Claimants.

Civ. 63-330.

United States District Court
D. Oregon.

Feb. 10, 1964.

Kenneth E. Roberts, of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for petitioners.

Cleveland C. Cory, of Rockwood, Davies, Biggs, Strayer & Stoel, Portland, Or., for claimants.

KILKENNY, District Judge.

Claimants challenge the right of a Court of Admiralty to entertain jurisdiction of petitioners' claim for exoneration or limitation of liability.[1] To be resolved is whether a small inland body of water in the State of Oregon, known as Lake of the Woods, constitutes navigable waters of the United States.

In July, 1961, a motor-boat, utilized for pleasure, was being operated by Morgan Johnson, Jr., on said lake, at which time it caught fire. One infant died from burns received, while other claimants professed personal injuries. Actions were commenced in the Oregon Courts to recover damages in excess of $200,000.00. This proceeding was commenced

1. 46 U.S.C. § 183 et seq.

for exoneration from, or limitation of all such liability to the value of the motor-boat.

The entire body of water lies within the Winema National Forest, at an elevation of approximately 4,950 feet, and measures approximately three miles in length by one mile in width. During the spring and summer months the lake and its shores are extensively used by those interested in general recreation, boating and fishing. The lake, at its deepest point, is approximately fifty feet. It is frozen and covered with snow from November to May in each year.

The lake has two principal inlets, neither of which touch navigable waters or are navigable in themselves. These streams carry the annual flow from the melting snows at higher altitudes. During the run-off, the streams may be from two to two and one-half feet in depth, while their average depth, in the summer, is from six inches to one foot. Lying in the bed of the streams are many trees and boulders.

The only outlet of the lake is a ditch to a stream which is aptly named "Seldom Creek". The headwaters of the ditch originate at a spillway in a man made dam. During the spring run-off the level of the lake is approximately four or five inches above the spillway. From the spillway the water is carried through the small drainage ditch into Seldom Creek. The water in the drainage ditch is never more than four or five inches in depth. No water flows over the spillway after the run-off or during the time the lake is frozen.

Seldom Creek has little or no water after the spring run-off. Its bed is obstructed by many trees, boulders, logs and other barriers. It runs for a distance of approximately three miles to its confluence with Four Mile Creek, the latter in turn, empties into Upper Klamath Lake, a large body of water which is connected with Lower Klamath Lake by the Link River. This river is connected with Lower Klamath Lake, which body of water drains into the Klamath River, which in turn empties into the Pacific Ocean. From the record in this cause, I find that neither the ditch leading from the lake to Seldom Creek, nor Seldom Creek itself is navigable in fact, nor could either of said streams be made navigable by any reasonable or appropriate means.

■■■■ From reading the original Limitation Act of March 3, 1851 [2], it is evident that the Congress enacted this legislation under the powers granted by the Commerce Clause.[3] Of interest is the fact that the original Act excluded from the benefit of its provisions, all vessels used in rivers or inland navigation.[4] As early as 1870 the Supreme Court, in The Daniel Ball, 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999, held that to constitute navigable waters of the United States within the meaning of an Act of Congress, in contra-distinction with navigable waters of the States, such waters must form, by themselves or by uniting with other waters, a continued highway over which commerce is, or may be carried on, with other states or foreign countries in the customary modes in which such commerce is conducted by water. However, in The Montello, 20 Wall. 430, 87 U.S. 430, 441, 442, 22 L.Ed. 391, attention is called to the fact that the true test of navigability of a stream does not depend on the mode by which the commerce is, or may be, conducted, nor the difficulties attending navigation. In United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465, it is held that streams or lakes which were navigable in fact must be regarded as navigable in law and that they are navigable in fact when they are employed or susceptible of employment in their natural and ordinary condition, as highways

---

2. 9 Stat. 635.

3. Article I, Section 8, Cl. 3.

4. This Act shall not apply to the owner or owners of any canal boat, barge, or light-er, or to any other vessel of any description whatsoever, used in rivers or inland navigation.

for *commerce* over which trade and travel are or may be conducted in the usual and customary modes. The statement of Mr. Justice Hughes in United States v. State of Utah, 283 U.S. 64, 75, 51 S.Ct. 438, 75 L.Ed. 844, is of particular significance on the application of the Commerce Clause.[5]

Although the waters of Lake of the Woods are in fact navigable for small boats and the waters of the lake might be susceptible to use for commercial purposes, such as the transportation of logs or other materials or commodities, from one side or end of the lake to the other, the fact remains that there is no outlet from this body of water to upper Klamath Lake which could be considered navigable in fact, nor made susceptible to navigation by any reasonable improvement. United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243.

In full accord with these conclusions, on factual backgrounds which are somewhat similar to those before me, are the cases of In re Keller's Petition, 149 F.Supp. 513 (D.C.Minn.1956) and In re Madsen's Petition, 187 F.Supp. 411 (D.C. N.D.N.Y.1960). However, I cannot subscribe to the political and economic reasons advanced as a partial basis for the decision in the latter case.

In my view, it is of no importance that the United States happened to own the land surrounding the lake. Such a fact is not influential in deciding whether the lake should be considered as navigable waters of the United States under the Commerce Clause of our Constitution. It is quite meaningful that counsel for petitioners have been unable to find even one case which would support petitioners'

contention that the Court has jurisdiction, in a limitation proceeding, by reason of the location of the lake within the boundaries of the National Forest.

No doubt the Congress could make the limitation statute applicable to a small inland lake under the powers granted in Article IV, Section 3, of the Constitution, commonly known as the Property Clause.[6]

Turning to the cases cited by petitioners in support of their claim that the waters of the lake should be viewed as navigable waters of the United States, it rather clearly appears that none involved a small inland body of water such as the lake under scrutiny. United States v. Appalachian Electric Power Co., supra, involved a stream flowing in interstate commerce which was navigable in fact and, the navigability of which, could be considerably improved by the expenditure of a reasonable sum of money. The Lake of the Ozarks, under consideration in Loc-Wood Boat and Motors v. Rockwell, 245 F.2d 306 (8 Cir. 1957) was created by the construction of a dam on the Osage River. It appears in the District Court Opinion that this river was historically a navigable stream. Petition of Wood, 145 F.Supp. 848, 854. This Court takes judicial notice of the fact that the Snake River, the waters of which were in question in Morrison-Knudsen Co., Inc. v. O'Leary, 288 F.2d 542 (9 Cir. 1961), were in fact navigable. The fact that these waters might have been diverted through a tunnel in which the decedent was drowned would not change the character of the waters. If anything, this decision emphasizes that the waters of Lake of the Woods do not qualify as navigable waters of the United States.

---

5. The question of navigability is thus determinative of the controversy, and that is a Federal question. This is so, although it is undisputed that none of the portions of the rivers under consideration constitute navigable waters of the United States, *that is they are not navigable in interstate or foreign commerce,* and

the question is whether they are navigable waters of the State of Utah.
   283 U.S. 64, 75, 51 S.Ct. 438, 75 L.Ed. 844.

6. "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * * *". Article IV, Section 3.

The dredging operation in Tabbs Bay, the source of the injury to the workman in McKie v. Diamond Marine Co., 204 F.2d 132 (5 Cir. 1953) was obviously in waters of a bay which would be viewed as navigable waters of the United States. The bay was a body of water on the Texas coast lying between Galveston, San Jacinto and Black Duck Bays. Petitioners find considerable comfort in the language of the Court at page 135, " * * Admiralty jurisdiction is not limited to transportation of goods and passengers in interstate or foreign commerce * * ". With that statement I need not quarrel. The Court was there dealing with a longshoreman's claim for personal injuries. What the particular language added to the decision is shrouded in obscurity. In any case, the Act under which petitioners are proceeding, and which, under the authorities heretofore cited, was given life by the Commerce Clause, was not being examined in McKie. Both Lake Texoma considered in Wilburn Boat Co. v. Fireman's Fund Insurance Co., 5 Cir., 201 F.2d 833, and Lake Tahoe, to which attention was directed in Davis v. United States, 185 F.2d 938 (9 Cir. 1950) cert. den. 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 673 (1951), consisted of large bodies of water lying between different states, the boundary line of the states passing through the waters of each of the lakes. In each case, the lake was used in interstate commerce.

 An analysis of other cases cited by the parties would unnecessarily lengthen this Opinion, without adding to an understanding of the reasons for the decision. The rule I believe applicable to the facts in this case is that small bodies of water, wholly in one state and not navigable in interstate or foreign water commerce, are not included in any common sense definition of "navigable waters of the United States". The Law of Admiralty, Gilmore & Black, p. 29.

Exoneration from or limitation of liability is made the subject of jurisdiction by specific statute, rather than under the general law of admiralty. The admiralty concept of limitation was rejected by the early decisions of the American Courts. The Rebecca, 20 Fed.Cas. p. 373. The 1851 Act was passed to give the same immunity to American shipowners, as that which existed in favor of the English. The Law of Admiralty, Gilmore & Black, p. 664. Judicial expansion of the limitation act is not favored. Maryland Casualty Co. v. Cushing, 347 U.S. 409, 437, 74 S.Ct. 608, 98 L.Ed. 806.

It is my finding that the misfortune which forms the basis of the petition did not occur on navigable waters of the United States and that the petition must be denied.

Finding that I have no jurisdiction to proceed, there is no alternative but to dismiss the petition and this cause.

The findings in this Opinion shall serve as my findings of fact and my views as to the law, as herein expressed, shall serve as my conclusions.