**STATE OF ALASKA, Plaintiff,**

v.

**UNITED STATES of America; James Watt, Secretary of the Interior; Curtis V. McVee, Alaska State Director, Bureau of Land Management; Bristol Bay Native Corp.; and Iliamna Natives Limited, Defendants.**

**Civ. No. A81–265.**

United States District Court,
D. Alaska.

May 12, 1983.

---

Kenneth C. Powers, Asst. Atty. Gen., Anchorage, Alaska, for plaintiff.

Cynthia L. Pickering, Asst. U.S. Atty., John D. Foster, Douglas B. Baily, Baily & Mason, Robert H. Hume, Jr., Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1346(f).

## I. BACKGROUND

The suit is primarily an action to quiet title to submerged lands beneath a small lake in southern Alaska.[1] The court is asked to rule on a unique and seldom litigated question, viz., whether floatplane use may be considered in applying the federal navigability test for determining title to submerged lands. The lake at issue, Slopbucket Lake, is located just north of Iliamna Lake. On January 23, 1980, the BLM concluded the lake was non-navigable for the purpose of determining the acreage and entitlement of native corporation land selections under the Alaska Native Claims Settlement Act (ANCSA). See 43 U.S.C. § 1611 (1976); 43 C.F.R. § 2650.5–1(b) (1982). This administrative decision is not being challenged in the present lawsuit. Interim conveyances for land beneath the lake were executed between the federal government and Native corporations pursuant to ANCSA. See id. § 2650.0–5(h) (1982). Iliamna Natives, Ltd. (Iliamna) was granted rights in the surface estate and Bristol Bay Native Corporation (BBNC) was granted rights to the subsurface estate. See generally 43 U.S.C. § 1613 (1976). The

---

1. The State's pleadings refer to the lake as both twenty and eighty acres in size. Bristol Bay Native Corporation states that the lake is less than thirty acres. While this discrepancy constitutes a genuine issue of fact, it is not a material fact for the purpose of resolving the present motions.

State of Alaska then brought this suit to quiet title to the lands beneath Slopbucket Lake.

The primary legal issue concerns application of the test for determining navigability for title. This test reflects a long-standing federal policy, first enunciated by the Supreme Court, regarding who owns title to much of the submerged land in our country.

■ In 1842, the Court acknowledged the English common law doctrine of public trust to the effect that "dominion and property in navigable waters, and in the lands under them [were] held by the king as a public trust . . . ." *Martin v. Waddell,* 41 U.S. 234, 263; 16 Pet. 367, 411, 110 L.Ed. 498 (1842). It further declared that once the Revolution took place, "the people of each state became themselves sovereign; and in that character [held] the absolute right to all their navigable waters and the soils under them for their own common use, subject only to the rights since surrendered by the Constitution to the general government." *Id.* at 262–63, 16 Pet. at 410. *Martin v. Waddell* dealt with one of the original thirteen state's (New Jersey) right to submerged land. Shortly thereafter, the Supreme Court made clear that new states have the same rights to submerged lands as did the original states. *See Pollard's Lessee v. Hagan,* 44 U.S. (3 How.) 212, 229–30, 11 L.Ed. 565 (1845). Hence, under what is commonly referred to as the doctrine of equal footing, newly admitted states to the Union acquire the same property interests in submerged lands as that enjoyed by the thirteen original states succeeding to the British Crown. *Utah v. United States,* 403 U.S. 9, 10, 91 S.Ct. 1775, 1776, 29 L.Ed.2d 279 (1971). *See Montana v. United States,* 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981); *Oklahoma v. Texas,* 258

U.S. 574, 583, 42 S.Ct. 406, 410, 66 L.Ed. 771 (1922). The states' absolute right to lands underlying navigable waters within their boundaries is recognized by Congress,[2] but conferred by the Constitution. *See Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 374, 97 S.Ct. 582, 588, 50 L.Ed.2d 550 (1977).

■ The central inquiry for determining title to submerged lands focuses on the concept of navigability as defined by the Supreme Court. Case law makes clear that navigability for this purpose is a question of federal law to be determined by the rule recognized and applied in the federal courts. *United States v. Oregon,* 295 U.S. 1, 13, 55 S.Ct. 610, 615, 79 L.Ed. 1267 (1935); *United States v. Holt State Bank,* 270 U.S. 49, 55–56, 46 S.Ct. 197, 199, 70 L.Ed. 465 (1926).

■ A body of water is navigable under federal law when it is used or susceptible of use in its ordinary condition as a highway for commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water. *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870). This test has not changed since its inception. Courts applying the test should be aware, however, that the concept of navigability is used for different purposes.[3] In this case, the navigability test is being used for the purpose of determining title to submerged land.

■ Much case law has been written in elucidating precise meanings for various words in the definition for navigability. Some of these cases reflect an expansion of the type of waterbodies that may be considered in determining navigability. The Supreme Court has expanded, beyond the rule at English common law,[4] the types of

2. *See e.g.,* Submerged Lands Act, § 2(a), 43 U.S.C. § 1301(a) (1976); Alaska Statehood Act, Pub.L. No. 85–508, § 6(m), 72 Stat. 343 (1958).

3. *See, e.g., Utah v. United States,* 403 U.S. 9, 91 S.Ct. 1775, 29 L.Ed.2d 279 (1971) (navigability determined in resolving title to land); *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 6 S.Ct. 291, 85 L.Ed. 243 (1940) (navigability determined regarding Congress' power

to license construction of dams pursuant to Commerce Clause); *The Robert W. Parsons,* 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73 (1903) (navigability determined regarding admiralty jurisdiction).

4. At common law, the test for navigability extended only to those waters subject to the ebb and flow of the tide. *See The Daniel Ball,* 77 U.S. (10 Wall.) at 563. *See also, The Steam-*

waterbodies that may be deemed navigable for the purpose of determining title. Non-tidal as well as tidal bodies of water may be regarded as navigable. *Barney v. Keokuk,* 94 U.S. (IV Otto) 324, 328, 24 L.Ed. 224 (1876). Lakes also may be deemed navigable for this purpose. *See Utah v. United States,* 403 U.S. at 11, 91 S.Ct. at 1776. Hence, it is conceivable that although Slopbucket Lake is a non-tidal body of water, it might be deemed navigable for the purpose at issue.

## II. THE SUMMARY JUDGMENT MOTIONS

Federal defendants seek partial summary judgment to the effect that aircraft use cannot render a waterbody navigable for the purpose of determining navigability for title. The State's cross-motion for summary judgment requests the court to rule as a matter of law that Slopbucket Lake was navigable in its entirety on the date Alaska entered the Union, and title to the bed of the lake vested in the State on that date.

### A. Federal Defendants' Motion

For the purpose of their motion, federal defendants concede the truth of the State's factual allegations concerning floatplane use on Slopbucket Lake. They maintain, however, that floatplane use is irrelevant to determinations of navigability for title.

Given the fact that the navigability test is used for different purposes, courts have occasionally recognized the need to distinguish the purpose for which a navigability determination is being made. *See Kaiser Aetna v. United States,* 444 U.S. 164, 171–72, 100 S.Ct. 383, 388–89, 62 L.Ed.2d 332 (1979); *Oregon v. Riverfront Protection Association,* 672 F.2d 792, 794 n. 1 (9th Cir. 1982); *North Dakota ex rel. Board of University and School Lands v. Andrus,* 671 F.2d 271, 278 (8th Cir.1982). This need arises in the present case, but for a reason previously unaddressed.

■■■ The court perceives a need to distinguish those cases in which navigability was determined concerning the power to regulate under the Commerce Clause from cases in which navigability was decided for title purposes. In *The Montello,* 87 U.S. (20 Wall.) 430, 22 L.Ed. 391 (1874), the Supreme Court liberalized the navigability test stated in *The Daniel Ball.* Both of these cases involved a navigability determination relative to Congress' power to regulate under the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3. *The Montello* holding may be interpreted as a recognition that any mode of conducting commerce may be considered in determining navigability. *See* 87 U.S. (20 Wall.) at 441–42. The court believes this to be true insofar as the Commerce Clause is at issue. It is especially true considering that since the time *The Montello* was decided, Congress' power under the Commerce Clause has greatly increased. A finding of navigability is no longer even necessary in order for Congress to be able to regulate commerce on a waterbody. *See Kaiser Aetna v. Riverfront Protection Association,* 444 U.S. at 173–74, 100 S.Ct. at 389–90. There is no case involving navigability for title, however, in which a court has intimated that any and all modes of conducting commerce may be considered in making the navigability determination.

While the navigability test of *The Daniel Ball* has lost its importance regarding Commerce Clause analysis, it remains the starting point in determining navigability for resolving title to submerged land. *See Utah v. United States,* 403 U.S. at 11, 91 S.Ct. at 1776. The Supreme Court recognizes that each application of the *Daniel Ball* test is "apt to uncover variations and refinements which require further elaboration." *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 406, 61 S.Ct. 291, 298, 85 L.Ed. 243 (1940). These words ring true in the present case. No federal court decision exists in which floatplane activity was considered in determining navigability for title. The phenomenon is no doubt due in part to the fact that floatplanes did not exist until the twentieth century, and few states have joined the Union since that development.

*boat Thomas Jefferson,* 23 U.S. (10 Wheat.) 428, 429, 6 L.Ed. 358 (1825).

The State makes many arguments in opposition to federal defendants' motion, and not all of them need be addressed. Much emphasis is placed by the State on the portion of the navigability test regarding the mode by which commerce is or may be conducted. *See The Daniel Ball,* 77 U.S. (10 Wall.) at 563. The court believes this factor is the pivotal consideration in the present case. There is no need for the court to address other elements of the navigability test if it is initially determined that floatplane use is legally irrelevant to the analysis.

The State proposes that the mode element of the test should be liberally construed to include floatplanes, and in support thereof acknowledges the following Supreme Court reasoning:

> [T]he true test of navigability ... does not depend on the mode by which commerce is or may be conducted ... The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river [waterbody], rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, *no matter in what mode the commerce may be conducted,* it is navigable in fact, and becomes in law a public river or highway.

*The Montello,* 87 U.S. (20 Wall.) 430, 441–42, 22 L.Ed. 391 (1874) (emphasis added). The above quote does not stand for the proposition that *any* mode of commerce may be considered in applying the test of navigability for title. *The Montello* concerned a navigability determination for a purpose related to Congress' authority to regulate under the Commerce Clause, so any type of mode might have been properly considered. A narrower construction is necessary when navigability is being determined for the purpose of resolving title to submerged land.[5]

The test set forth in *The Daniel Ball* refers to "customary *modes* in which such commerce is conducted *by water.*" 77 U.S. (10 Wall.) at 563 (emphasis added). The State might well be able to persuade the trier of fact that floatplanes constitute a customary mode of conducting commerce in Alaska. It is also true that floatplane activity occurs, in part at least, upon the water. The court rules as a matter of law, however, that floatplanes may not be considered a mode of conducting commerce *on water* for the purpose of determining navigability for title. The court interprets the navigability test, insofar as it is used to determine title to submerged lands, to be limited to consideration of modes of commerce that operate primarily on the water. That is, the mode must be primarily waterborne in nature. Hence, conventional waterborne vessels that do not leave the water are modes of conducting commerce within the *Daniel Ball* test. *See, e.g., Utah v. United States,* 403 U.S. at 11–12, 91 S.Ct. at 1776–77 (passenger boats, excursion boats, livestock boats); *United States v. Utah,* 283 U.S. 64, 82, 51 S.Ct. 438, 443, 75 L.Ed. 844 (1931) (rowboats, flatboats, barges, steamboats); *United States v. Holt State Bank,* 270 U.S. at 56, 46 S.Ct. at 199 (sailing vessels). Conventional waterborne vessels that are temporarily removed from the water, *e.g.,* to portage, are also modes within the test of navigability for title. *See United States v. Oregon,* 295 U.S. at 21, 55 S.Ct. at 618 (canvas canoes); *North Dakota ex rel. Board of University and School Lands v. Andrus,* 671 F.2d at 277–78 (canoes). In addition, it is not even necessary that a vessel be used in conducting the commerce. The mere floating of logs has

---

5. In *George v. Beavark, Inc.,* the Eighth Circuit stated it was "wary of unnecessary extension of any rule on navigability, particularly when it could well lead to absurdity." 402 F.2d 977, 981 (8th Cir.1968). Absurd results would no doubt occur in the present case if floatplane use were deemed legally relevant in determining navigability for title. There are over three million lakes in Alaska and a great number of them are accessible by floatplane. A ruling in favor of the State would severely complicate the land selection scheme in Alaska which Congress set forth in the Alaska Statehood Act and ANCSA. *See* Alaska Statehood Act, Pub.L. No. 85–508, § 6(a), 72 Stat. 340 (1958); Alaska Native Claims Settlement Act, 43 U.S.C. § 1611 (1976).

**1228**

been considered a mode of conducting commerce within the *Daniel Ball* test. *See Oregon v. Riverfront Protection Association,* 672 F.2d at 795.

All the previously recognized modes of conducting commerce in determining navigability for title involve either vessels or activities in which the commerce at issue is conducted primarily on the water itself. Since floatplanes operate primarily in the air as opposed to the water, they are not a mode of conducting commerce on water for the purpose of the test. The court does not accept as controlling the State's argument that floatplane activity on the water is part of a continuous joint air-water highway over which commerce is conducted. The argument has merit in determining whether Congress has power to regulate via the Commerce Clause. As stated previously, however, the navigability test in the present case is being applied for a different purpose.

Federal defendants have postured their motion seeking a ruling as to aircraft in general, yet their memorandum focuses only on floatplane use. While it is conceivable the present ruling will also be applicable to uses by skiplanes, helicopters and all other aircraft capable of landing on water but operating primarily in the air, this memorandum and order addresses only floatplane use. The court therefore grants partial summary judgment to the federal defendants to the effect that floatplane activities on Slopbucket Lake are not modes of conducting commerce on water for the purpose of determining navigability for title. Such activities are legally irrelevant to the navigability determination.

*B. Plaintiff's Motion*

█ The State seeks summary judgment to the effect that Slopbucket Lake was navigable in its entirety on January 3, 1959, when Alaska became a State, and that title to the bed of the lake vested in the State of Alaska on that date. The memorandum accompanying the State's motion emphasizes that the court need only rule on whether the floatplane mode of conducting commerce on water may be ignored in making navigability determinations.

As the preceding analysis indicates, floatplane activities are legally irrelevant in making navigability determinations for the purpose of resolving title to submerged lands. This ruling must be construed narrowly, however, so as not to preclude consideration of floatplane activities in navigability determinations related to admiralty jurisdiction or Congress' power under the Commerce Clause. Summary judgment is therefore denied the State.

Accordingly, IT IS ORDERED:

1) THAT partial summary judgment is granted federal defendants to the effect that floatplane activities are not modes of conducting commerce on water for the purpose of determining navigability for title. Such activities are legally irrelevant to the navigability determination.

2) THAT summary judgment is denied plaintiff.