Etoile LEBLANC and Stephen
Ossen, Plaintiffs,

v.

Terry CLEVELAND, Robert Grant, Jr.
and JRD Retailers, Ltd., d/b/a Syd and
Dusty's Outfitters, Defendants.

Terry CLEVELAND and Robert Grant,
Jr., Defendants and Third–Party
Plaintiffs,

v.

SYD AND DUSTY OUTFITTERS,
Third–Party Defendant.

No. 95–CV–1417.

United States District Court,
N.D. New York.

Oct. 1, 1997.

Kreindler & Kreindler, New York City (Paul S. Edelman, of counsel), for Plaintiffs Etoile LeBlanc, Stephen Ossen.

Office of Todd J. Krouner, Chappaqua, NY (Todd J. Krouner, of counsel), for Plaintiffs Etoile LeBlanc, Stephen Ossen.

Burke, Grossman, Valenti, Albright, Harter, Rzepka & Beebe, L.L.P., Rochester, NY (Johnson S. Albright, II, of counsel), for Defendant Robert Grant, Jr.

DuPee & Orloff, Goshen, NY (Mark D. Orloff, of counsel), for Defendant Terry Cleveland.

Office of E. David Duncan, Albany, NY (E. David Duncan, of counsel), for Defendant JRD Retailers, Ltd., d/b/a Syd and Dusty's Outfitters.

### MEMORANDUM DECISION AND ORDER

KAHN, District Judge.

On July 4, 1994 plaintiffs Etoile LeBlanc ("LeBlanc") and Stephen Ossen ("Ossen") suffered personal injuries when the kayak they were paddling on the Hudson river was struck by a recreational motor boat operated by defendant Terry Cleveland and owned by defendant Robert Grant, Jr. ("Grant"). LeBlanc and Ossen had rented their Kayak from defendant/third-Party defendant JRD Retailers, Ltd., d/b/a Syd and Dusty's Outfitters ("JRD"). The collision occurred approximately one and one-half miles downstream from the confluence of the Sacandaga and Hudson rivers in the vicinity of Lake Luzerne.

The plaintiffs commenced the instant action on April 15, 1995. The complaint contains a single claim sounding in negligence and invokes the court's admiralty jurisdiction.

JRD now moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(h) on the ground that the court lacks admiralty jurisdiction over this matter. JRD contends that the Hudson river in the vicinity of the accident is not a navigable waterway. The plaintiffs and defendant Grant assert that the river is navigable in that area and that admiralty jurisdiction thus exists.

The facts are essentially undisputed. The Army Corps of Engineers describes the subject waterway as follows:

> The traditional source of the Hudson River is at Lake Tear in the Adirondacks. The upper stretch of the river runs in a generally westerly direction then southerly and easterly to Glens Falls. From Glens Falls the course is generally southerly to the mouth at the Battery in New York. Total length of the river is 313.2 [miles], while the airline distance from the source to the mouth is about 250 miles. Between the source and Fort Edward (mile 193.8) the river is precipitous and marked by numerous falls and rapids. Below the dam at Troy, (mile 153.8), the river is tidal and can be considered an arm of the sea. The locks at Troy Dam provide passage between the Atlantic Ocean and the New York State Barge Canal and the Champlain Canal.

Krouner Aff., Ex. A (Army Corps of Engineers, Determination of Navigability for Hudson River, New York, dated May 21, 1975). Although the river lies wholly within the state of New York, the parties agree that below Fort Edward the Hudson river is a navigable waterway subject to the court's admiralty jurisdiction because it permits passage to the open sea.[1] The parties differ as to the navigability of the segment of the Hudson between Fort Edward and the place of the plaintiffs' accident.

Until approximately 1951, timber had been floated down the Hudson from a point near its source to the timber mills of Glens Falls and Fort Edward. This practice originated in the early nineteenth century. There are now nine dams between the place of the

---

1. Indeed, large vessels are often visible from the windows of the court's chambers plying the Hudson en route to points north and south of Albany.

accident and Fort Edward. The parties appear to agree that these dams would now frustrate that activity, with the possible exception of river conditions that would permit timber float over the dams.

Nothing in the record suggests that the Hudson north of Fort Edward is now, or has ever been, an artery of maritime commerce.[2] The subject collision occurred in the vicinity of a stretch of flat water some seven miles in length which is used by pleasure boats. This part of the Hudson cannot, however, be accessed from Fort Edward due to the presence of numerous areas of rapids, the aforementioned dams, and at least three major falls of 30 feet or more in height. Thus, in order for a boat to travel on this seven-mile stretch of the Hudson, it must be launched from the river's banks.

■ "Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ('situs') and (2) 'bear[s] a significant relationship to traditional maritime activity' ('status')." *Keene Corp. v. United States,* 700 F.2d 836, 843 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (quoting *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 254–61, 93 S.Ct. 493, 497–501, 34 L.Ed.2d 454 (1972)). It is well settled that the collision of two pleasure boats in navigation constitutes conduct that bears a significant relationship to traditional maritime activities. *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 675 n. 5, 102 S.Ct. 2654, 2658 n. 5, 73 L.Ed.2d 300 (1982). The parties thus do not quarrel with the proposition that the status prong of admiralty jurisdiction has been established. There is strong disagreement, however, with respect to the situs prong of the test.

■ " 'Navigable water' subject to federal admiralty jurisdiction was defined as including waters that are navigable in fact in *The Propeller Genesee Chief v. Fitzhugh,* [53 U.S.(12 How.) 443], 13 L.Ed. 1058 (1851)." *Kaiser Aetna v. United States,* 444 U.S. 164, 173 n. 7, 100 S.Ct. 383, 389 n. 7, 62 L.Ed.2d 332 (1979). Rivers are navigable in fact when "they are used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *The Daniel Ball,* 77 U.S.(10 Wall.) 557, 563, 19 L.Ed. 999 (1870). In *Reynolds v. Bradley,* 644 F.Supp. 42 (N.D.N.Y.1986), then Chief Judge Munson defined navigability as the "requirement that a body of water be presently supporting or capable of supporting interstate trade or travel at the time of the alleged wrongful acts ..." *Id.* at 44. Most other courts to consider the question have arrived at a similar formulation for navigability. *See Mullenix v. United States,* 984 F.2d 101, 104 (4th Cir.1993) (navigability depends upon a waterway's capability to bear commercial navigation); *Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts,* 921 F.2d 775, 778 (8th Cir.1990), *cert. denied,* 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991) (same); *Finneseth v. Carter,* 712 F.2d 1041, 1044 (6th Cir.1983) (a waterway is "navigable ... if it is used or capable or susceptible of being used as an interstate highway for commerce over which trade or travel is or may be conducted in the customary modes of travel on water"); *Adams v. Montana Power Co.,* 528 F.2d 437, 439 (9th Cir.1975) (same); *Great American Ins. Co. v. Tugs "Cissi Reinauer",* 933 F.Supp. 1205, 1211 (S.D.N.Y. 1996) ("[a] river is considered 'navigable' if it is capable of being used by the public for the purposes of transportation and commerce."); *Sawczyk v. United States Coast Guard,* 499 F.Supp. 1034, 1040 (W.D.N.Y.1980) (same).

■ In arguing that the situs of the accident supports admiralty jurisdiction, the plaintiffs rely upon the opinions of the Army Corps of Engineers and the Coast Guard which both hold that the Hudson river is a navigable waterway of the United States in its entirety. Krouner Aff., Exs. A & B. As Judge Munson noted in *Reynolds,* these opinions are entitled to some weight but ulti-

2. The Army Corps of Engineers notes that the Hudson "[a]bove the head of tidewater at Troy was not considered navigable." Krouner Aff., Ex. A. However, the Corps also points out that "[t]he upper Hudson was long used by traders, trappers and Indians." *Id.* The court notes that the ability to "use" a river does not necessarily equate with the ability to travel upon it in a continuous manner to its mouth.

mately do not resolve the question. 644 F.Supp. at 44. That is because definitions of navigability employed to establish the bounds of federal regulatory authority do not in turn determine the limits of the federal judiciary's admiralty jurisdiction. *Adams*, 528 F.2d at 440; *Reynolds*, 644 F.Supp. at 45; *see also Kaiser Aetna*, 444 U.S. at 170–71, 100 S.Ct. at 388–89 (recognizing that the definitions of navigability articulated by the court have varied depending upon the federal power at issue). For example, while the placement of a dam across a navigable waterway may not divest Congress of the power to regulate the waterway, it will have the effect of divesting the court of admiralty jurisdiction if all commercial maritime activity is eliminated thereby. *Adams*, 528 F.2d at 440. That is because "[t]he fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *Sisson v. Ruby*, 497 U.S. 358, 367, 110 S.Ct. 2892, 2898, 111 L.Ed.2d 292 (1990) (quoting *Foremost*, 457 U.S. at 674, 102 S.Ct. at 2658).[3] Without the possibility of maritime commerce, there is no interest served in imposing a uniform body of admiralty law upon a case or controversy when the application of state tort law would both redress the wrong and accommodate the state's interest in applying its substantive law. *Adams*, 528 F.2d at 440.

In seeking a broader definition of navigability, the plaintiffs cite to the Supreme Court's decision in *The Montello*, 87 U.S.(20 Wall.) 430, 22 L.Ed. 391 (1874). Therein, the Supreme Court stated:

> The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable in its natural state of being used *for purposes of* commerce, no matter in what mode the commerce be conducted, it is navigable in fact, and become in law a public river or highway.

*Id.* at 441–42. The plaintiffs' citation to *The Montello* illustrates the point made earlier.

The definition of navigability set forth in the case of *The Montello* is unquestionably broader than that set forth in the cases cited above. But this broader definition is not available to the plaintiffs. It is enough to note that in *The Montello* the Supreme Court was not addressing the admiralty jurisdiction of the federal courts under Article III, § 2. Rather, at issue was the question of whether steamboats navigating the Fox river in Wisconsin were subject to Congressional regulation under the Commerce Clause. *Id.* at 441–45; *Kaiser Aetna*, 444 U.S. at 171, 100 S.Ct. at 388. Thus, *The Montello* and the several other cases upon which plaintiffs rely which address federal regulatory authority under the Commerce Clause do not provide authority for the question of navigability vis-à-vis admiralty jurisdiction. *Livingston*, 627 F.2d at 169. This view finds support in the majority of the case law as well as in recent scholarly opinion. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 3–3 (1994).

In another reach for admiralty jurisdiction, the plaintiffs and defendant Grant point to the region's rich logging history during which vast amounts of timber floated over the Hudson's rapids and falls on the way to distant sawmills. Again, it is the difference in the lines of precedent with respect to the concept of navigability which emasculates this argument. While evidence of past logging activities might support a finding of navigability for purposes of federal jurisdiction under the Federal Power Act (16 U.S.C. § 796(8)), such evidence has never been held to support admiralty jurisdiction. *Cf. State of N.Y. Dep't of Envtl. Conservation v. Fed. Energy Regulatory Comm'n*, 954 F.2d 56, 58–60 (2d Cir.1992) (navigability of Salmon river under the Federal Power Act based, in part, upon evidence of past logging activities).

In summary, there is no evidence in the record that suggests that the Hudson river above Fort Edward is presently or has ever been "capable of supporting interstate trade or travel." *Reynolds*, 644 F.Supp. at 44.

---

**3.** Of course, after *Foremost* we know that the collision between two pleasure craft falls within the sphere of admiralty jurisdiction because the interest in protecting maritime commerce "can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct." 457 U.S. at 675, 102 S.Ct. at 2658.

The record clearly demonstrates that the presence of natural obstructions such as white water and falls as well as the presence of more recent man-made dams absolutely prevent continuous travel by any type of boat from the place of the accident to the waters below Fort Edward. Thus, the situs of the accident does not constitute a waterway that is navigable in fact. Admiralty jurisdiction is, therefore, lacking in this case.

■ In their effort to remain in the federal forum, the plaintiffs contend that the court may nevertheless exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear this case. The court disagrees. The statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

 \*     \*     \*     \*     \*     \*

28 U.S.C. § 1367(a). Noticeably absent here is any claim over which the court has original jurisdiction. The only claim alleged in the complaint is one sounding in simple negligence. As discussed previously, plaintiffs' assertion of admiralty jurisdiction over this claim is flawed. There is no other federal basis for jurisdiction over this negligence claim. Without original jurisdiction over at least one claim in the complaint, there can be no exercise of supplemental jurisdiction—there is nothing to "supplement." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996).

■ The plaintiffs also argue that the court has subject matter jurisdiction over the case because it has addressed itself to the issue of navigability which is ordinarily a question of fact. This argument is without merit. A federal court has jurisdiction " 'to determine whether it has jurisdiction over the parties and subject matter of a suit.' " *Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir.1993) (quoting 13A Charles A. Wright, Arthur R.

Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3536 at 535 (2d ed.1984)). The exercise of this " 'jurisdiction to determine jurisdiction' " cannot, of course, result in the creation of subject matter jurisdiction where none exists. *Id.* This power to determine questions of subject matter jurisdiction includes the power to rule on disputed issues of fact. *Id.* The court notes that it was unnecessary to resolve any factual issues in the present case because the dispositive facts concerning jurisdiction were not in dispute.

■ It would seem that jurisdictional problems, like politics, can make for strange bedfellows. Both the plaintiffs and defendant Grant point to the action commenced by Grant under the Limitation of Liability Act (46 U.S.C.App. § 185) and contend that the commencement of this action provides the court with original jurisdiction. First, the court observes that defendant Grant's action was dismissed as untimely (and not consolidated with the present action as suggested by the plaintiffs). Second, this court's jurisdiction under the Act is coextensive with its admiralty jurisdiction. *Matter of Guglielmo*, 897 F.2d 58, 61 (2d Cir.1990). "[T]he Act does not create independent jurisdiction in the federal courts by 'arising under' federal law under either 28 U.S.C. § 1331 (federal question) or § 1337 (commerce, et al.) (1988)." *Three Buoys Houseboat Vacations U.S.A., Ltd.*, 921 F.2d at 780. Thus, if the court lacks admiralty jurisdiction, it lacks jurisdiction under the Act as well. The district court cases cited by defendant Grant are not binding precedent and do not persuade the court to the contrary.

That the issue of subject matter jurisdiction was raised "late in the game" is unfortunate from the perspective of the parties' preparations for trial. However, the defense that the court lacks subject matter jurisdiction may be raised at any time and if it appears that the defense is valid the action must be dismissed.[4] Fed. R.Civ. P. 12(h)(3).

In conclusion, it is hereby

---

**4.** It is noted that the plaintiffs are not without their state court remedies.

ORDERED that defendant JRD's motion to dismiss the complaint on the ground that the court lacks jurisdiction over the subject matter is GRANTED; and it is further

ORDERED that the complaint and third-party complaint are DISMISSED;

IT IS SO ORDERED.