GUSTAVO A. GELPI, United States District Judge
Juaquin Jordi Andreu and Magdalena Cruzval ("Plaintiffs") sued Dr. Luis I. Morell-Abella, Carla Giovannoni-Morell, the conjugal partnership between them, Palmas del Mar Homeowners Association, Inc., Palmas del Mar Slip Owners Association, Inc., Isla San Marcos Homeowners Association, Fernando Carbonell, EMA 3, *459 Inc., MAPFRE/PRAICO Insurance Company, and Triple S Insurance in Puerto Rico state court for damage to their vessel sustained during Hurricane Maria. (Docket Nos. 1; 5-1). Dr. Morell-Abella and Ms. Giovannoni-Morell ("Defendants") removed the case to federal court on the basis of original jurisdiction under federal admiralty and maritime law. (Docket No. 1 at 1). Every other appearing co-defendant[1] has consented to the removal. (Docket Nos. 13; 18). Plaintiffs objected and moved to remand. (Docket No. 10). Defendants opposed the motion. (Docket No. 15). For the reasons below, Plaintiffs' motion to remand is DENIED.
I. Standard of Review
Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 163-64, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).
When a party questions removal, the removing party bears the burden of showing that removal is proper. See, e.g., Danca v. Private Health Care Systems, 185 F.3d 1, 4 (1st Cir. 1999) (citation omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Section 1447 is strictly construed and any doubt concerning federal jurisdiction must be resolved in favor of state court jurisdiction. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ; Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004).
II. Discussion
A. Original Jurisdiction
As noted above, a defendant may remove a case from state court to federal court if the federal court has "original jurisdiction." 28 U.S.C. § 1441(a). The determination of whether original jurisdiction exists here turns on whether the Court has admiralty jurisdiction over the matter pursuant to 28 U.S.C. § 1333(1). For a federal court to have admiralty jurisdiction over a tort claim, the tort must (1) occur on navigable waters and (2) bear some relationship to traditional maritime activity. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).
Plaintiffs argue that even if their vessel was docked in navigable waters-a point they do not concede-because there was no actual or potential effect on maritime commerce, the Court lacks admiralty jurisdiction. (Docket No. 10 ¶¶ 6-7). Defendants counter that the Court does have admiralty jurisdiction over the tort claim because pleasure crafts docked in navigable waters bear a significant relationship to traditional maritime activity. (Docket No. 15 at 2).
1. Navigable Waters
To ascertain whether the tort occurred on navigable waters, the Court must ask whether the body of water in question "form[s] in [its] ordinary condition by [itself], or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water."
*460 The Daniel Ball, 77 U.S. 557, 563, 10 Wall. 557, 19 L.Ed. 999 (1870). "[T]he true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation." The Montello, 87 U.S. 430, 441, 20 Wall. 430, 22 L.Ed. 391 (1874). Instead, "[t]he capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use." Id.
As the First Circuit explained, "[f]or admiralty purposes, the concept of 'navigability' is generally understood to describe 'a present capability of waters to sustain commercial shipping,' or 'contemporary navigability in fact'...." Cunningham v. Dir., Office of Workers' Comp. Programs, 377 F.3d 98, 108 (1st Cir. 2004) (citing Livingston v. United States, 627 F.2d 165, 169-70 (8th Cir. 1980) ); see also, e.g., LeBlanc v. Cleveland, 198 F.3d 353, 359 (2d Cir. 1999) (same). Evidence indicating that a body of water is presently used as an avenue for commercial navigation buoys up the contention that it is navigable, however, the reverse is not true. Price v. Price, 929 F.2d 131, 135 (4th Cir. 1991). The mere fact that commercial activity is not currently occurring does not torpedo the argument that a waterway is navigable, as long as it has the capacity to be so used. Id.; see also Finneseth v. Carter, 712 F.2d 1041, 1046 (6th Cir. 1983) (explaining that the focus is on the potential for, rather than actual maritime commerce).
The common thread in many of the "navigability" cases is that a body of water, once able to support commercial vessels, was later dammed or otherwise rendered unusable as a means of conducting interstate trade or travel. When a waterway is thus blocked, even the potential for commercial maritime activity is lost and it becomes non-navigable. See, e.g., Tundidor v. Miami-Dade Cty., 831 F.3d 1328, 1331 (11th Cir. 2016) ; Adams v. Montana Power Co., 528 F.2d 437, 439 (9th Cir. 1975) (holding that if by damming a waterway, the potential for commercial maritime activity ceases to exist, then the waterway is not navigable for the purposes of admiralty jurisdiction).
Plaintiffs in this case have not alleged any such impediment to the waterway in question. While it may indeed be the case that commercial traffic in that area is sparse or nonexistent and that "there is almost no potential for commercial boats to be tied to [the] dock," (Docket No. 10 at 3), the fact remains that such potential exists. At the time of the incident, Plaintiffs' vessel was tied to the dock of Villa 9 of Isla San Marcos in Humacao, Puerto Rico, a waterway in Palmas del Mar that leads into the sea. (Docket No. 5-1 ¶ 20). Commercial vessels, should they wish to, could use the area for trade or travel. The waterway runs from the docks into the ocean, meaning it is capable of functioning as an interstate highway for commerce. There is no need for present, actual commercial activity; it is enough that it could occur. Because there is potential for the waterway at issue to be used in such a manner, it is navigable for admiralty jurisdiction purposes.
2. Relationship to Traditional Maritime Activity
As for whether the tort bears some relationship to traditional maritime activity, the Court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 534, 115 S.Ct. 1043 (internal citations and quotation marks omitted). Second, the Court "must determine whether the general character of the activity giving rise to the *461 incident shows a substantial relationship to traditional maritime activity." Id.
In deciding whether the incident had a potentially disruptive impact on maritime commerce, the Supreme Court anchored its analysis "not on the specific facts at hand but on whether the 'general features' of the incident were 'likely to disrupt commercial activity.' " Id. at 538, 115 S.Ct. 1043. Thus, Plaintiffs do not find safe harbor in their argument that, simply because their claim involves only non-commercial vessels tied to a private dock, admiralty jurisdiction does not exist. (Docket No. 10 at 5). While it may be the case that the only boats involved in the incident happened to be pleasure boats, "[t]he jurisdictional inquiry does not turn on the actual effects on maritime commerce ... nor does it turn on the particular facts of the incident in this case." Sisson v. Ruby, 497 U.S. 358, 363, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). Instead, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." Id.
The general features of this case-the alleged improper securing of nearby boats and insufficiently constructed dock posts in the face of an impending hurricane-clearly fit within the category of potential disruption to commercial maritime activity. While most of the boats in the area may have been pleasure crafts, had there been a commercial vessel nearby, the possibility that it would have been impacted in such conditions is quite high. Again, the focus is not on "the specific facts at hand" but rather on "whether the 'general features' of the incident were 'likely to disrupt commercial activity.' " Grubart, 513 U.S. at 538, 115 S.Ct. 1043. Boats coming loose from their moorings-or indeed, the moorings themselves coming loose-in high winds and causing damage to other vessels in the area falls squarely within this category.
With respect to the second prong of the Grubart test, the question is "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." Id. at 539-40, 115 S.Ct. 1043. Defendants argue that a collision between pleasure boats moored at private docks in a navigable waterway is clearly substantially related to "traditional maritime activity." (Docket No. 15 at 8). Plaintiffs take a different tack, contending that because the vessels in question were all non-commercial pleasure crafts tied to private docks, there was no impact on actual or possible maritime commerce, and thus admiralty jurisdiction is inappropriate here. (Docket No. 10 at 3). In light of the facts and relevant case law, Plaintiffs' argument flounders.
The need for maritime regulations that provide predictability and uniformity means that both commercial and pleasure vessels must be governed by the same rules. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). There is thus no requirement that the vessels themselves be engaged in commercial activity for there to be a substantial connection to traditional maritime activity. Id. ("[A] collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce."). Additionally, the Supreme Court has held that storing of boats at a marina on navigable waters is sufficiently related to fall within the necessary substantial relationship category. Grubart, 513 U.S. at 540, 115 S.Ct. 1043 (citing Sisson, 497 U.S. at 367, 110 S.Ct. 2892 ("Clearly, the storage and maintenance of a vessel at a marina on navigable *462 waters is substantially related to "traditional maritime activity'....") ). The act of storing pleasure boats-like those at the center of this dispute-at docks on navigable waters, is plainly within the contemplated meaning of "traditional maritime activities." Grubart, 513 U.S. at 534, 115 S.Ct. 1043. As such, the Court has original admiralty jurisdiction over the case and removal was proper.
B. Concurrent Jurisdiction
Plaintiffs also contend that because there is concurrent federal and state court jurisdiction in this case-rather than strictly exclusive federal jurisdiction-the case must be remanded to state court. (Docket No. 10 at 6). This argument misses the mark. Even if federal jurisdiction is not exclusive, it is still proper. Simply because jurisdiction exists to hear the case in state court does not mean that it may only be heard in state court. "The rationale for removal is that defendants as well as plaintiffs should have the option to choose federal court for cases within the federal jurisdiction. That jurisdiction is intended to protect both parties, and therefore, both parties should have access to it." JOSEPH W. GLANNON, EXAMPLES AND EXPLANATIONS- CIVIL PROCEDURE 115-16 (5th ed. 2003). Where there is original federal jurisdiction, as here, a defendant may properly remove the case.
C. Attorney's Costs and Fees
If the Court chooses to remand a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal". 28 U.S.C. § 1447(c). Such costs should not be awarded, however, when the removing party had an objectively reasonable basis for removal. See Martin v. Franklin Capital Corp., 546 U.S. 132, 135, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). In their motion to remand, Plaintiffs requested attorney's fees and costs, arguing that Defendants "definitely lacked [an] objectively reasonable basis" for removal. (Docket No. 10 at 7). As explained above, Defendants' removal was objectively reasonable, and indeed, was proper because original federal jurisdiction exists here. Thus, the Court, within its discretion, declines to award fees.
III. Conclusion
For the reasons set forth above, Plaintiffs' motion to remand at Docket No. 10 is DENIED.
SO ORDERED.

As of April 30, 2018, only Palmas del Mar Homeowners Association, Inc. and MAPFRE/PRAICO Insurance Company have appeared.